**MORGAN (UNITED STATES et al., Interveners) v. ATLANTIC COAST LINE R. CO.**

District Court, S. D. Georgia, Waycross Division.

April 29, 1940.

W. C. Parker and D. M. Parker, both of Waycross, Ga., for plaintiff.

Thomas W. Davis, of Wilmington, N. C., Wilson, Bennett, Pedrick & Bennett, of Waycross, Ga., and John B. Sutton, of Tampa, Fla., for defendant.

Robert L. Stern, Sp. Asst. to Atty. Gen., Roy C. Frank, of Washington, D. C., and George A. Downing, of Atlanta, Ga., Attys. for Wage and Hour Division, for interveners.

BARRETT, District Judge.

From the pleadings in said action and from the evidence adduced at the trial, and from all of the files and records therein, the court makes the following findings of fact and conclusions of law:

Findings of Fact.

1. The plaintiff is a resident of Brantley county, Georgia, and brings this action for the recovery of back wages, liquidated damages and attorneys' fees due the plaintiff from the defendant.

2. The defendant is a corporation duly organized and existing under and by virtue of the laws of the States of North Carolina and Virginia, and is engaged in the business of transporting by rail, for hire, freight, baggage, express, passengers, and mail, to and from, into and through the

618

states of Georgia, South Carolina, North Carolina, Virginia, Florida and Alabama.

3. Harold D. Jacobs is the Administrator of the Wage and Hour Division, United States Department of Labor.

4. The United States of America and Harold D. Jacobs as Administrator of the Wage and Hour Division, United States Department of Labor have, by order of this court, intervened as parties in said action.

5. The plaintiff was employed by the defendant on and between the dates of July 13, 1937 and June 21, 1939, inclusive, in the repair and maintenance of the defendant's railroad tracks and road bed at various points near Hoboken, Georgia, and at other places in the State of Georgia.

6. Plaintiff was paid 20 cents an hour by defendant during the period from July 13, 1937 to October 24, 1938.

7. During the period between October 24, 1938 and June 16, 1939, the plaintiff worked for the defendant a total number of 1,568 hours and received compensation therefor at the rate of 20 cents an hour, or a total compensation of $313.60.

8. When plaintiff first began to work for defendant in July, 1937, he was told by his foreman that he could occupy a house furnished by the company free of charge and that he could use old discarded wooden ties as household fuel free of charge. Pursuant to that statement plaintiff moved into a house at Nahunta provided by the defendant. On October 14, 1938, plaintiff moved, at the request of defendant, from Nahunta to a house furnished by the defendant at Hoboken, the foreman stating that it would be better for the defendant to have plaintiff live near his work in case he was needed.

9. After October 14, 1938, the plaintiff lived in the house at Hoboken, but prior to June 15, 1939, he was not told that he was to be charged or otherwise required to pay rent for it or that such rent would be included in his wage.

10. On June 15, 1939, plaintiff was told by his foreman that the foreman had received a letter stating that the section hands would be charged thereafter $5, per month for the houses in which they lived and $1.50 a month for fuel.

11. The relationship between the defendant and its maintenance-of-way employees was governed by a collective bargaining agreement which did not require that section laborers live in or pay for company houses.

12. The house in which plaintiff lived at Hoboken consisted of two rooms of about twelve feet by fifteen feet each. It was built of board wood with the floor consisting of boards about three feet above the ground. The floor had numerous cracks in it, one as much as two inches wide and thirteen inches long and other cracks of various sizes, and the walls also had cracks of substantial size in them. There was a privy about seventy steps behind the house. The windows of the house did not fit and there were cracks above some of them. The house had only two out doors, both on the front, and had no veranda or porch. The house was on low land, on which water accumulated when it rained, making it necessary to wade through the yard in getting out. The water pump located in front of the house was also used by a neighboring family.

13. Defendant permitted plaintiff, other section men, and any one else to take for fuel old railroad ties removed from the track when their usefulness as ties was over. Such ties as were not so used were burned by the section laborers. Plaintiff was not told prior to June 15, 1939, that he was being charged for the use of said ties or any other fuel. There is no evidence to show that the furnishing of these ties to plaintiff or others cost defendant anything, but such use by employees saved the defendant the cost of burning them.

14. During the summer defendant furnished ice water in kegs to be used by the section hands while at work. The agreement between defendant and its maintenance-of-way employees provided that the company furnish such ice without cost to the employees.

15. Plaintiff was transported from the place where he reported for work and back on a motor furnished by defendant, on which car the laborers and tools used for work were carried. The car was necessary to carry the tools, and the maintenance-of-way agreement provides that work time begins when leaving and ends when returning to headquarters or camp cars.

16. Plaintiff was never told by defendant or any official or foreman that charges for ice or transportation were to be included in his wages or that he was to pay for such service in any way.

17. There is no evidence to show the reasonable or actual cost to the defendant

of any facility claimed by it to have been furnished by it to the plaintiff.

18. There is no evidence showing that defendant customarily furnishes facilities to its maintenance-of-way section laborers or any other employees.

19. During the period between October, 1938, and June, 1939, the reports of defendant to the Interstate Commerce Commission show that the amount paid maintenance-of-way section laborers for straight time was 20 cents an hour and for overtime, which under the agreement between it and its maintenance-of-way employees is to be one and one-half times straight time, approximately 30 cents an hour.

20. During the period from October 24, 1938, to June 16, 1939, defendant paid plaintiff $78.40 less than the amount required to be paid under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The liquidated damages due under Section 16(b) of that Act, 29 U.S.C.A. § 216(b), amount to $78.40; and by consent an attorney's fee of $250.

Conclusions of Law.

1. Plaintiff and defendant are engaged in interstate commerce.

2. The establishment by Congress of a minimum wage to be paid by defendant to plaintiff is a valid regulation of such interstate commerce and not in violation of the Tenth Amendment.

3. The establishment of minimum wages by Congress by the Fair Labor Standards Act is not arbitrary or capricious or an unreasonable interference with liberty of contract in violation of the due process clause of the Fifth Amendment.

4. Section 3(m) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 203(m), was not included in the Act as originally passed by the Senate or the House of Representatives of the United States, but was inserted at the time of the Conference between the two houses. Section 6 of the Act, 29 U.S.C.A. § 206, is mandatory. Section 3(m) is permissive to the employer as to how a portion of the wages can be paid, but it imposes a condition, that is, that the facility shall be its "reasonable cost, as determined by the Administrator, to the employer". Because of possible difficulties or delays in having such determination by the Administrator we can not say that Congress did not mean what it said. Certain it is that the railroad which has not sought such determination should not be heard to complain that it has not been made. There is no evidence that it could not have been promptly made, and there is no reason assigned why protection could not have been afforded the railroad during any necessary delay in determination.

The absolute obligation of the railroad was to pay under Section 6. If payment in other than money was desired the method of so doing should have been sought by it.

5. The plaintiff is entitled to recover $156.80, plus costs and disbursements, and $250 as a reasonable attorney's fee.