676 F.2d 468
 25 Wage & Hour Cas. (BN 645, 94 Lab.Cas. P 34,194
 Raymond J. DONOVAN, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee,
v.
The NEW FLORIDIAN HOTEL, INC., a Florida Corporation d/b/a
Biscaya Retirement Club, a/k/a Biscaya Hotel, et
al., Defendants-Appellants.
 No. 80-5348.
 United States Court of Appeals,
Eleventh Circuit.
 May 17, 1982.
 
 Gars, Dixon & Shapiro, Robert Dixon, Sandy Karlan, Miami, Fla., for Bosem & The New Floridian Hotel.
 Power & McDonald, Thomas W. Power, Robert P. McDonald, Washington, D. C., amicus curiae, for Foodservice & Lodging Institute.
 Donald S. Shire, Dept. of Labor, Greg O'Duden, Washington, D. C., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT, HILL and ANDERSON, Circuit Judges.
 R. LANIER ANDERSON, III, Circuit Judge:
 
 
 1
 The Secretary of Labor brought this action under § 17 of the Fair Labor Standards Act, 29 U.S.C.A. § 217 (West 1975) ("FLSA") to enjoin The New Floridian Hotel, Inc., A. Lionel Bosem, and Bobby Goodis from violating the minimum wage, overtime compensation, and recordkeeping provisions of the FLSA and its related regulations. Finding that the defendants had repeatedly and willfully violated the FLSA, the district court enjoined the defendants from committing further violations and awarded 207 employees a total of $189,435.22 in back wages.[1] The New Floridian Hotel, Inc. and A. Lionel Bosem appeal, raising three issues. First, appellants argue that certain individuals who received awards of back pay were not "employees" within the meaning of the FLSA. Second, appellants argue that the district court's award of back pay to individuals who did not testify at trial was erroneous as a matter of law. Finally, appellants urge that the district court improperly denied them credits for the reasonable cost of meals and lodging supplied to various employees. For the reasons set forth below, we affirm.
 
 I.
 
 2
 This case concerns the operation of three Miami Beach retirement facilities, the Biscaya Retirement Club ("Biscaya"), the Coronet Kosher Retirement Club ("Coronet"), and the President Madison Retirement Club ("President Madison"). These establishments provided room and board to their residents and employed a staff of service workers. Appellant The New Floridian Hotel, Inc., managed the operation of the Biscaya. Appellant A. Lionel Bosem was the principal officer, stockholder and managing official of The New Floridian Hotel, Inc. Bosem also ran the President Madison, and Bosem and Goodis were partners in the operation of the Coronet. The complaint alleged that appellants and Goodis had violated §§ 6(a) and 15(a)(2) of the FLSA, 29 U.S.C.A. § 206(a) (West 1978) and § 215(a)(2) (West 1965) by failing to pay their employees the applicable minimum wage rates. The complaint also charged that appellants and Goodis had violated §§ 7 and 15(a)(2) of the FLSA, 29 U.S.C.A. § 207 (West Supp.1981) and § 215(a)(2) (West 1965) by failing to pay employees at a rate of one a one-half times the regular rate of wage for hours in excess of 40 worked in any one week. Additionally, the complaint alleged violation of the recordkeeping provisions of the Act, 29 U.S.C.A. § 211(c) and § 215(a)(5) (West 1965), and the corresponding regulations, 29 C.F.R. Part 516 (1981).
 
 
 3
 The alleged violations of the FLSA appeared in several guises. With respect to employees working at the Coronet, the evidence indicated that the payroll records had been systematically falsified. A payroll employee at the Coronet testified that she had been instructed to reduce the hours worked by Coronet employees by one-half and double the hourly wage rate actually paid to these employees. This practice masked the fact that the Coronet employees were being paid less than the minimum wage or were not being adequately compensated for their overtime. Eighty-six employees were affected by this procedure.
 
 
 4
 The employees at the Biscaya had also been the victims of minimum wage and overtime violations. In fact, some individuals were paid as little as $.17 per hour for their work. The workers included kitchen help, maids, waitresses, and other employees, including a group of the individuals who had been placed at the Biscaya following their release from mental hospitals and who performed assorted tasks. In addition, four employees at the President Madison had been denied proper compensation for overtime.
 
 
 5
 The appellants were unable to produce many of the records which they were required to maintain under the FLSA and the regulations. These records included records reflecting hours worked by employees, the cost of providing employees meals and lodging which were claimed as credits against minimum wage payments, the individuals who were entitled to meals and lodging, and the amount of the credits actually deducted from employees' salaries.
 
 
 6
 In its Findings of Fact and Conclusions of Law, the district court ruled that appellants and Goodis had violated the FLSA and enjoined them from committing further violations. Following a motion for reconsideration, the district court held a hearing to reexamine the issue of which employees were entitled to back pay. The district court thereafter modified its original ruling and held that fifty-eight individuals were not entitled to recover back wages because the evidence was insufficient to support the compliance officer's calculation of their entitlement to back wages. In addition, the awards to several other employees were modified by the court. The court left intact its award with respect to the remaining individuals and entered judgment. This appeal follows.
 
 II.
 
 7
 Appellants' first argument is that five former mental patients who performed tasks at the Biscaya and later the Coronet were not "employees" within the meaning of the FLSA. These individuals were paid between $.17 and $.55 per hour, and some may have received room and/or board for their work. The substance of appellants' argument is that they did not intend to create an employment relationship, but merely gave the former mental patients tasks to keep them occupied. We find appellants' argument to be devoid of merit.
 
 
 8
 It is well-established that the issue of whether an employment relationship exists under the FLSA must be judged by the "economic realities" of the individual case. Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1189 (5th Cir. 1979). That the appellants may not have had the intention to create an employment relationship is irrelevant; "it is sufficient that one person 'suffer or permit (another) to work.' " Brennan v. Partida, 492 F.2d 707, 709 (5th Cir. 1974).[2] Here, the district court found that these five mental patients did work which was of economic benefit to the appellants.[3] This finding is not clearly erroneous. Therefore, the district court correctly concluded that these individuals were employees and were entitled to back wages for their work.[4]
 
 III.
 
 9
 Appellants' second argument is that the district court committed error in awarding back pay to employees who did not testify during the five-day trial. Appellants claim that the record does not support the district court's finding that there was a definite pattern of hours worked for the various groups of nontestifying employees. Appellants also urge that the district judge, in the hearing held on November 15, made "findings of fact" that no such pattern existed, and that therefore his later finding that there was such a pattern must be clearly erroneous. We find ample support in the record for the district court's findings and therefore reject appellants' argument.
 
 
 10
 Appellants did not produce the required employment records for many of the workers in question, and they supplied insufficient records with respect to others. Appellants also failed to produce certain payroll records until the eve of trial. Therefore, the task of determining the number of hours worked by employees at each of the three facilities was difficult at best. The Supreme Court in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), addressed the problems associated with an employer's failure to maintain the records required by the FLSA. After weighing the competing equities and finding that employees should not be penalized by an employer's failure to comply with its statutory duty to maintain proper records, the Supreme Court specified the burden of proof applicable in determining whether an employee is entitled to back pay under the FLSA. The Court held:
 
 
 11
 In such a situation, we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.
 
 
 12
 Id. at 687-88, 66 S.Ct. at 1192 (citation omitted). This standard has been applied in many Fifth Circuit cases. See, e.g., Skipper v. Superior Dairies, Inc., 512 F.2d 409, 419-20 (5th Cir. 1975); Brennan v. General Motors Acceptance Corp., 482 F.2d 825, 829 (5th Cir. 1973).[5]
 
 
 13
 Essentially, appellants argue that the Secretary did not make out the prima facie case required under Mt. Clemens with respect to those employees who did not testify. However, it is clear that each employee need not testify in order to make out a prima facie case of the number of hours worked as a matter of "just and reasonable inference." See, e.g., Brennan v. General Motors Acceptance Corp., supra. In this case, twenty-three employees actually testified at trial. The testimony of these employees was supported by that of the compliance officer who investigated this case. Management and office staff of these establishments also testified with respect to employment practices and hours worked at the various establishments. Further, what records were produced were used to calculate entitlements to back wages.
 
 
 14
 In the November 15 hearing, the district judge carefully scrutinized the evidence upon which the awards of back pay were based. Finding the record insufficient to support a finding of a pattern of working hours with respect to fifty-six employees, the district judge denied these individuals back wages. This group included fourteen individuals who performed kitchen and other assorted tasks, two assistant managers, and forty-two former mental patients, all of whom did not testify. Additionally, the district court reduced the awards of back pay to two individuals, refusing to award back wages for a period of time that predated the periods to which the evidence of a pattern of employment related. With respect to the other employees, the district court did find sufficient support in the record for his award of back pay. These findings are not clearly erroneous.[6]
 
 
 15
 The evidence is sufficient to support the award of back pay with respect to both the employees who testified and those who did not. With respect to those employees employed at the Coronet who were the victims of the falsification of records, the procedure employed by the compliance officer of doubling the hours recorded, and halving the recorded wage rate, to determine both actual hours and actual wages, was unquestionably proper. The testimony of the bookkeeper and the records produced provide more than a sufficient basis for the awards to these individuals.
 
 
 16
 Of the employees working at the President Madison who were awarded back pay for overtime for which they were improperly compensated, the testimony of two of the employees, coupled with the records produced, provided a sufficient basis for the award to those two who did not testify.
 
 
 17
 Of the employees at the Biscaya, there were four groups who received back pay awards. The first is the group of former mental patients. Of this group, only those who actually testified received awards. With respect to the second group-i.e., testifying and nontestifying waitresses-the district court relied upon the testimony of three waitresses, interviews conducted by the compliance officer, testimony of the manager of the Biscaya and the Coronet, and employee records reflecting number of days worked and daily wage rates. The trial judge found that waitresses normally worked an eight and one-half hour day.[7] With respect to the third group-i.e., testifying and nontestifying maids-only one maid testified at trial, but the award to the entire group of maids was supported by the testimony of the compliance officer and the manager at the Biscaya. Similarly, with respect to the remaining group of workers at the Biscaya-which group included a variety of kitchen aides, maintenance workers, porters, desk attendants and other employees-the evidence clearly supported the finding of a pattern of employment sufficient to calculate the entitlements to the back wages.
 
 
 18
 In summary, we find that there is ample evidence in the record to support the district court's findings that nontestifying employees were entitled to back pay. The Secretary made out a prima facie case and the appellants did not negative the reasonableness of the inferences used to determine the number of hours worked by nontestifying employees. Therefore, the district court's award of back wages to nontestifying employees was proper, even if its calculation of hours worked was only approximate.
 
 IV.
 
 19
 A third argument raised on appeal concerns the district court's ruling that, under § 3(m) of the FLSA, appellants were not entitled to a credit against unpaid minimum wages and overtime compensation due to their employees for meals and lodging allegedly provided to the employees. The district court held that there were three independently sufficient grounds for denying the credit. These were: (a) that appellants failed to maintain any records reflecting which of their employees did or did not receive meals or lodging; (b) that appellants failed to provide their employees with an option to receive cash in lieu of the meals and lodging with respect to which appellants claimed a credit, and therefore the employees' acceptance of such meals and lodging was not "voluntary and uncoerced"; (c) that appellants failed to sustain their burden of proving "reasonable costs" of the meals and lodging by producing records or other credible evidence. Appellants attacked the validity of the district court's reliance on each of these grounds. Because we decide that the third ground relied upon by the district court-that appellants failed to prove reasonable costs-is a sufficient basis for the denial of the credit for meals and lodging, we need not, and do not, address the validity of the first two grounds on which the district court relied in denying the credit.[8]
 
 
 20
 Section 3(m) of the FLSA, 29 U.S.C.A. § 203(m) (West 1978), allows employers to include the reasonable cost of servicing meals, lodging, or other facilities in employee wages for purposes of the FLSA.[9] When calculating the amount of back wages due to an employee under the FLSA, therefore, the employer is entitled to a credit for the reasonable cost of providing the meals and lodging. The regulations promulgated by the Secretary define "reasonable cost" "to be not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees." 29 C.F.R. § 531.3(a) (1981). " 'Reasonable cost' does not include a profit to the employer or to any affiliated person." Id. § 531.3(b). The regulations require employers to keep certain records of the cost incurred in furnishing board, lodging or other facilities, id. § 516.27(a), and also require the employer to maintain records showing additions or deductions from wages paid for board, lodging or other facilities on a work week basis. Id. § 516.28(b).
 
 
 21
 The district court held that the employer has the burden of showing that he is entitled to the credits claimed under § 3(m) of the FLSA, and that in this case, the appellants had failed to satisfy that burden by proving the reasonable cost of the credit items. A review of the limited case law on point convinces us that the district court correctly placed the burden of proving the "reasonable cost" of providing board, lodging, or other facilities on the employer. In Marshall v. DeBord, Lab.Cas. P 33,721 (E.D.Okl.1978), the court ruled that the employer has the burden of showing that he has satisfied the conditions imposed by the FLSA and regulations in order to be entitled to a credit for the reasonable cost of meals and lodging provided to employees. Finding that the defendant in that case had not produced records or other evidence to establish the reasonable cost (not including profit) of providing the board, lodging, or other facilities which he customarily furnished to employees, the court denied any credit against back wages due. Similarly, in Morgan v. Atlantic Coastline R. Co., 32 F.Supp. 617 (S.D.Ga.1940), the court did not allow the employer to include the value of housing facilities provided to employees as wages paid for purposes of the FLSA, because the employer had not requested the Administrator of the Wage and Hour Division, United States Department of Labor, to determine the reasonable cost of providing those facilities. Id. at 619.[10] The court noted that there was no evidence to show the reasonable or actual cost of any facility which employers claimed they had furnished to the employees. Id.
 
 
 22
 The decision of the former Fifth Circuit in Brennan v. Veterans Cleaning Service, Inc., 482 F.2d 1362 (5th Cir. 1973), supports the holding that the burden of proving reasonable cost is on the employer. There, the court reviewed the question of whether an employer was entitled, for purposes of determining whether he had complied with the minimum wage requirements of the FLSA, to have considered as part of wages paid various amounts deducted from an employee's salary. The employer had made both permissible and impermissible deductions from the employee's paycheck. The court noted that the permissible deductions at issue there were similar to the credit for the reasonable cost of board, lodging and other facilities, since both are exceptions to the general rule that wages be paid "free and clear." Id. at 1369. The court held that the employer had the burden of segregating permissible deductions from impermissible ones. Since the employer was unable to produce records or other evidence to establish which deductions were permissible in most cases, the court denied the employer credit for all deductions from employees' salaries with one exception. However, in that one instance, the employer was able to segregate permissible from impermissible deductions, and the court reduced the award of back pay accordingly. By analogy, in a case where an employer claims a credit for the reasonable cost of providing board, lodging, or other facilities, and produces only evidence of cost including profit, the employer should have the burden of segregating the permissible deduction from wages from impermissible deductions, i.e., the reasonable cost of meals, lodging, or other facilities from the total cost plus profit of providing them.[11] As in Veterans Cleaning Service, if the employer fails to do so, he is not entitled to claim any credit.[12]
 
 
 23
 In this case, the appellants have failed to prove the reasonable cost of the meals and lodging which they claim was furnished to employees. The appellants have not kept the records required by 29 C.F.R. § 516.27 with respect to the cost of providing the meals and lodging in question of with respect to the actual deductions claimed on a week-by-week basis. The Administrator of the Wage and Hour Division made no determination of reasonable cost in this case, nor does the record reflect any request by the appellants for such a determination.[13] The appellant relies on three pieces of evidence for the proposition that they have established the reasonable cost of the meals and lodging provided. First, appellants point to the testimony of Mr. Bosem, who testified that he estimated the cost of lunch to be $1.00 and dinner to be $2.00. However, an employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the FLSA, and where there has been no determination of reasonable cost by the Wage and Hour Division, does not satisfy the employer's burden of proving reasonable cost. Marshall v. DeBord, 84 Lab.Cas. at 48,476. Moreover, we note that the district judge, who was charged with making credibility choices, held that defendants had failed to establish the reasonable cost by "credible evidence." The district court was entitled to discount Mr. Bosem's unsubstantiated estimate of cost on credibility grounds.
 
 
 24
 Appellants point to two other pieces of evidence. The record reflects that the Coronet provided hot meals to a certain nonprofit organization at a price of $1,379. Additionally, one of appellant's managers testified as to the price charged to residents for one month room and board at the three facilities. Both of these pieces of evidence include profit to the appellants for providing these services. The appellants produced no evidence to indicate what their profit margin was with respect to either of these services. Therefore, this evidence did not establish reasonable cost, and the district court would have had to speculate in order to segregate reasonable cost from total cost plus profit. As noted above, the burden to segregate permissible credits from impermissible ones was on the appellants. Since appellants failed to adduce evidence of reasonable cost of providing board and lodging to employees, we conclude that the district court correctly denied appellants credit for meals and lodging.
 
 V.
 
 25
 For the foregoing reasons, the judgment of the district court is
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Although the judgment entered by the district court on January 2, 1980, listed $188,648.99 in back wages and interest payable by the defendants, this amount was modified to reflect additional prejudgment interest in an order of the court entered on July 25, 1980. (Record, p. 700). The July 25 order found defendants in civil contempt for failing to comply with the January 2 judgment and added postjudgment interest and other costs to the amount payable by the defendants, raising the total amount due to $198,409
 
 
 [2]
 29 U.S.C.A. § 203(e)(1) defines "employee" to be "any individual employed by an employer." Section 203(g) provides: " 'employ' includes to suffer or permit to work."
 
 
 [3]
 Appellants argue in brief that the work done by the former mental patients did not benefit them because their tasks were performed so poorly that appellants were unable to rely on that labor to replace the services of other employees. Although the mental patients may not have performed their tasks well, the evidence indicates that these individuals did perform meaningful work. An employee is entitled to compensation for the hours he or she actually worked, whether or not someone else could have performed the duties better or in less time. Skipper v. Superior Dairies, Inc., 512 F.2d 409, 419 (5th Cir. 1975)
 
 
 [4]
 As Judge Brown noted in Weisel v. Singapore Joint Venture, Inc., supra, the issue of whether these individuals were employees is a legal determination, not subject to the clearly erroneous standard of review. However, the individual findings of fact which lead to that legal determination must be examined under the clearly erroneous standard. Id. at 1189
 
 
 [5]
 In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Id. at 1209
 
 
 [6]
 By what can only be termed as a tortured reading of the transcript of the November 15, 1979, hearing, appellants maintain that the district judge made "findings of fact" to the effect that the record did not reflect a definite pattern of hours worked for any of the employees who did not testify. A fair reading of the transcript as a whole, however, indicates that the district judge did find a pattern with respect to all of the employees to which back pay awards were granted
 
 
 [7]
 This method of reconstructing the number of hours worked from the testimony of the compliance officer and computations based on the payroll records that were available has been approved by the former Fifth Circuit in Marshall v. Mammas Fried Chicken, Inc., 590 F.2d 598, 599 (5th Cir. 1979). See Donovan v. Hamm's Drive Inn, 661 F.2d 316 (5th Cir. 1981) (approving award based on employee testimony that groups of employees averaged certain number of hours per week and on calculations from that testimony)
 
 
 [8]
 The Foodservice and Lodging Institute, as amicus curiae, raises significant questions regarding the legal rulings of the district court on the first two grounds listed above. Since we affirm on the basis of the third ground only-that appellants failed to prove reasonable costs-we need not address the arguments raised by amicus
 
 
 [9]
 Section 3(m) of the FLSA, 29 U.S.C.A. § 203(m) (West 1978), reads as follows:
 (m) "Wage" paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees: Provided, That the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement applicable to the particular employee: Provided further, That the Secretary is authorized to determine the fair value of such board, lodging, or other facilities for defined classes of employees and in defined areas, based on average cost to the employer or to groups of employers similarly situated, or average value to groups of employees, or other appropriate measures of fair value. Such evaluations, where applicable and pertinent, shall be used in lieu of actual measure of cost in determining the wage paid to any employee. In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee. The previous sentence shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection, and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.
 
 
 [10]
 We acknowledge that in Shelton v. Missouri-Kansas-Texas R. Co., 74 F.Supp. 961, 963 (E.D.Mo.1940), the court, without discussing the burden of proof issue, stated that unless employees could show that the reasonable cost of the benefits which they were furnished, combined with actual wages paid, amounted to less than the statutory minimum wage, the employees could not recover back wages
 
 
 [11]
 Further support for placing the burden of proving reasonable cost on the employer is found in Foremost Dairies, Inc. v. Wirtz, 381 F.2d 653 (5th Cir. 1967), cert. denied, 390 U.S. 946, 88 S.Ct. 1031, 19 L.Ed.2d 1134 (1968), where the court indicated that the employer bears the burden of proving not only entitlement to exemptions from the FLSA but also bears the burden of proving entitlement to the exception under § 7(c) relating to overtime compensation of employees working irregular hours pursuant to a contract of employment. Id. at 656 n.4
 
 
 [12]
 It is arguable that the burden of proof standard outlined in Anderson v. Mt. Clemens Pottery Co., supra, discussed above in Part III of this opinion, would apply to the issue of who has the burden of proving reasonable cost. We note that even if this test applies, the former Fifth Circuit in Skipper v. Superior Dairies, Inc., 512 F.2d 409, 420 (5th Cir. 1975), interpreted this test to place on the employer a burden of proving by the preponderance of the evidence that it had complied with the FLSA once the plaintiff established a prima facie case. See also Shultz v. Hinojosa, 432 F.2d 259, 261 (5th Cir. 1970) (holding that where employer fails to keep records, burden is on employer to "disprove" evidence that the employees were improperly compensated). Applied to a case involving a claimed deduction for the reasonable cost of provided board, lodging, or other facilities, we believe that once the plaintiff establishes a prima facie case, it is the responsibility of the employer to prove that, under § 3(m), he is entitled to a credit for the reasonable cost of providing meals, lodging, or other facilities. We do not believe that an employee must, as a part of his prima facie case, prove that the employer is not entitled to such a credit where the employer has not maintained the required records to substantiate the claimed credit. Once the plaintiff shows as a matter of just and reasonable inference that the wages paid to him did not satisfy the requirements of the FLSA, the issue of whether an employer is entitled to a credit is a matter upon which the employer bears the burden of proof under Mt. Clemens
 
 
 [13]
 Both § 3(m) of the FLSA and the regulations provide for requests by employers for a determination of reasonable cost by the Administrator. In fact, 29 C.F.R. § 531.4(a) (1981) establishes a specific procedure to facilitate such determinations by the Administrator. As the court in Morgan v. Atlantic Coastline R. Co., supra, indicated, the burden of invoking the Administrator's assistance is on the employer. Id. at 619