**Keith ARCHIE, et al., Plaintiffs,**

v.

**GRAND CENTRAL PARTNERSHIP, INC., et al., Defendants.**

**No. 95CIV.0694(TPG)(SEG).**

United States District Court, S.D. New York.

Feb. 9, 2000.

---

Mitchell A. Lowenthal, Cleary, Gottlieb, Steen & Hamilton, New York, NY, for Plaintiffs.

Geoffry Best, LeBoeuf, Lamb, Leiby & MacRae, New York, NY, for Defendants.

## MEMORANDUM OPINION

GRUBIN, United States Magistrate Judge.

This case, brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 (the "FLSA"), and the New York Minimum Wage Act, N.Y. Labor Law § 650, was referred to me for a determination of the damages to be paid to each of the plaintiffs. This order is to resolve the pending motions of the parties and to establish the formula for the final calculation of each plaintiff's entitlement.

The liability of the defendants was found by the Honorable Sonia Sotomayor after trial in an opinion reported at 997 F.Supp. 504. Familiarity by the readers hereof with that opinion and the factual and legal background of this matter is assumed and will not be repeated herein. Briefly, defendants ran a multi-service drop-in center for the homeless (the "Center"), for which

they received funding pursuant to a contract from New York City (attached as Exhibit K to the Declaration of Jennifer L. Kroman, dated October 19, 1998 (the "Contract")) as well as from other sources.[1] One of the programs defendants offered was called Pathway to Employment ("PTE"), in which participants were assigned to work 40 hours per week performing tasks that were also performed by the Center's staff employees in the areas of clerical, maintenance, food services, administrative, outreach and recycling work. The staff members were paid minimum wage or more, while PTE participants received substantially less.

All plaintiffs herein were homeless or formerly homeless persons who participated in the PTE program between 1990 and 1995. Defendants argued at trial that plaintiffs were not employees, but trainees receiving essential job skills development. Judge Sotomayor, however, found that defendants were a common enterprise engaged in interstate commerce and so covered by the FLSA and that plaintiffs were employees of defendants pursuant to both the FLSA and the New York Minimum Wage Law. Judge Sotomayor thus concluded that plaintiffs were entitled to the difference between the lawful minimum wage and the compensation they actually received, plus statutory damages equal to the amount of back wages, as well as costs and attorney's fees.

The following facts, relevant to the issues treated herein, have been found by Judge Sotomayor or are otherwise undisputed. Pursuant to the Contract with the City and to its own policies, the Center was always open to any homeless persons, providing them with, among other things, meals, counseling, showers, clothing, mail access and referrals for employment and housing. However, those persons who chose to take part in the PTE program were required to make arrangements for stable housing prior to entering the program. The Center's policy was to turn away no homeless person. The Contract provided that no funds were to be spent on meals for employees. Contract, Art. 4.9 ¶ C. Staff members paid $1.00 for each meal, and they did not receive counseling or shelter. Although the Center had no beds, many homeless people spent nights there on chairs. The Contract provided that the defendants and the City would minimize overnight sleeping at the Center. Contract, Art. III ¶ CC.1.

### 1. "Benefits" Generally

The major controversy outstanding between the parties as to damages concerns whether certain benefits provided to PTE participants are to be considered compensation and deducted from the payable wage rate. The FLSA defines "wage" to include "the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees...." 29 U.S.C. § 203(m); see also 29 C.F.R. §§ 531.3, 531.29. Defendants argue that if plaintiffs are (retroactively) employees, the benefits they were provided are (retroactively) compensation. Thus, they seek to deduct the costs of meals, shelter, counseling and transportation from damages. Plaintiffs dispute this contention on numerous grounds.

■ Plaintiffs' overall position, that there should be no allowance for any benefits provided, is not tenable. Defendants are hardly "estopped," as plaintiffs argue, from being able now to treat plaintiffs as employees for purposes of damages because they argued that plaintiffs were not employees in the liability phase of this case. That issue was, of course, the grava-

---

1. While I recognize the differing roles of each of the three defendants in this case, including the fact that only one is a party to the Contract, the distinctions are not relevant for purposes hereof, and for convenience I refer in this Opinion to all or each of them simply as "defendants."

men of this case, and the court, agreeing with plaintiffs, found that they were employees and were to have been paid as such. A similar situation existed in *Donovan v. Tony and Susan Alamo Foundation,* 567 F.Supp. 556, 563, 574 (W.D.Ark. 1982), *mod. on other grounds,* 722 F.2d 397 (8th Cir.1983), *aff'd,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985), where "volunteers" who had worked were found to have been employees for purposes of minimum wage. The court allowed deduction for those reasonable costs deemed part of their wages even though the defendant, of course, had unsuccessfully argued the plaintiffs had not been employees.

■ Plaintiffs further maintain that defendants provided the benefits not as wages but because the Contract required them to do so and because it was defendants' policy to provide them to all homeless persons and, thus, as plaintiffs would have received these benefits even if they had not been in the PTE program, they should not be seen as part of wages now. This contention is similarly misplaced. The issue is not what these plaintiffs would have received as unemployed homeless persons, but what they would have received as employees. The fact is that they would not have received the same benefits if they had been treated as and properly paid as employees. Nor is the issue what defendants thought the status of plaintiffs was then. It is undisputed that defendants at the time did not consider the benefits they provided to be compensation for plaintiffs' work. The question is how to deal with the situation in retrospect, and it is not as difficult an issue as the parties make it out to be. Defendants had staff members doing the same work as plaintiffs who did receive minimum wage and did not receive the same free benefits that plaintiffs and other homeless persons did. However defendants may have thought of plaintiffs at the time, the court has found that they were in fact employees just as the staff members were. If plaintiffs' contentions were accepted, they would be placed in a position better than that of employees; they would be paid as employees but receive all the entitlements of the non-working homeless persons that employees did not receive.

■ Plaintiffs' additional paralogistic arguments are rejected for the same reasons. Thus, that defendants did not maintain records showing deductions from wages on a workweek basis, as required under 29 C.F.R. § 516.27(b) for employers who provide benefits as wages, does not mandate denial of deductions now. Of course defendants did not keep such records, as they did not view plaintiffs in the status of employees until Judge Sotomayor held them to have been so. Moreover, plaintiffs offer no authority that the failure to have kept records by itself mandates denial of deductions. Plaintiffs rely on *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468 (11th Cir.1982), where the court rejected the defendants' effort to deduct the cost of meals and lodging when the defendants had not kept the records required by the regulations. However, the court in that case did not rest its decision on the absence of the required records, but rather on the fact that the defendants had not put forward evidence that supported their claims as to the costs to them of the room and board. The matter is one of sufficient evidence:

> ... the district judge, who was charged with making credibility choices, held that defendants had failed to establish the reasonable cost by "credible evidence." The district court was entitled to discount [the] unsubstantiated estimate of cost on credibility grounds.

676 F.2d at 475. Indeed, it is in the nature of cases like this one that the FLSA record-keeping requirements will never be met. Thus, in *Donovan v. Tony and Susan Alamo Foundation,* where it was determined that people who lived at the Foundation and worked for it were to have been treated as employees and should have been paid accordingly, the court allowed deductions for board, lodg-

ing and other benefits based on estimates of cost despite the Foundation's failure to have maintained the required records:

> Obviously, the books were not maintained with a view toward "segregating the cost" of benefits provided the associates. There is a sufficient basis, however, for drawing reasonable inferences as to the actual costs.

567 F.Supp. at 563.

▮▮▮ Similarly, plaintiffs' · assertion that benefits cannot be deducted because plaintiffs were not given notice and because their acceptance was not voluntary and uncoerced is rejected. Such purported requirements serve no ·purpose and make no sense where the employment relationship is not found until after the fact.[2] Finally, plaintiffs' contention that defendants may not deduct for benefits provided during non-compensable time is also rejected. Notwithstanding *Brock v. Tony and Susan Alamo Foundation*, 842 F.2d 1018, 1020 (8th Cir.1988), *cert. denied*, 505 U.S. 1204, 112 S.Ct. 2992, 120 L.Ed.2d 869 (1992), by plaintiffs' proposition an employee would have to be working a 24–hour day before an employer could include, for example, lodging as part of the wage. *Cf. Soler v. G. & U., Inc.*, 833 F.2d 1104, 1110–11 (2d Cir.1987); *Martinez v. Deaf Smith County Grain Processors, Inc.*, 583 F.Supp. 1200, 1207 (N.D.Tex.1984). Indeed, although specifically authorized by

statute, it is difficult to understand how lodging would ever be part of "wage" under plaintiffs' contention, since an employee would have to be working while sleeping. Moreover, the instant case is not comparable to the *Alamo Foundation* case on this point. There, the plaintiffs worked sometimes in the Foundation's commercial establishments and sometimes in other capacities. Here, plaintiffs were enrolled in the PTE program and were expected to work regular hours until they left the program. There was no non-compensable time equivalent to that of the *Alamo Foundation* litigation.

### 2. *"Benefits" Specifically*

I will now turn to the individual items provided to plaintiffs that defendants seek to deduct. There are two issues with respect to each item: (1) whether the item may be deducted, *i.e.*, was it "customarily furnished" to defendants' employees, and (2) if deductible, have defendants met their burden of establishing its reasonable cost (or presenting a workable method by which its cost can be ascertained).

It must be borne in mind, however, that while the parties seem content to apply the Department of Labor's regulations to this entire matter, the regulations were not written for the situation involved in this case and do not on their face even strictly apply.[3] Moreover, certain unique circum-

---

**2.** Plaintiffs' interpretation of 29 C.F.R. § 531.30, that acceptance of benefits must be "voluntary and uncoerced," has, in any event, been struck down by three courts of appeals as being inconsistent with the statute. *See Herman v. Collis Foods, Inc.*, 176 F.3d 912 (6th Cir.1999); *Donovan v. Miller Properties, Inc.*, 711 F.2d 49 (5th Cir.1983); *Davis Brothers, Inc. v. Donovan*, 700 F.2d 1368 (11th Cir.1983).

**3.** 29 U.S.C. § 216(b) permits employees to bring actions against an employer who has not paid them the minimum wage, as here; this right terminates if the Secretary of Labor files an action on their behalf. 29 U.S.C. § 216(c). "Wage," defined by 29 U.S.C. § 203(m) and as indicated earlier, includes the "reasonable costs, *as determined by the*

Administrator *[of the Wage and Hour Division]*, to the employer of furnishing such employee with board,·lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such·employer to his employee." (Emphasis added.) Cases at least since *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 403–04, 62 S.Ct. 659, 86 L.Ed. 914 (1942), cite the "reasonable costs" provision in the context of private actions. While there seems to be nothing in the either the statute or the regulations that explicitly requires a court to allow for "reasonable costs" in cases when such costs have not been determined by the Administrator, it is taken for granted in the case law that such allowance should be made. This is no doubt because, among other reasons, there would be no reason for an employer to be liable for a

stances of this case make strict application of previous case law on facially similar issues unfeasible, as will be apparent below.

### a. *Meals*

■ There is no doubt that meals provided to plaintiffs may be deducted. Staff of the Center were furnished with meals at a cost, $1.00 per meal. Furthermore, the Contract specifically prohibited City funds to be used for meals for employees. Finally, as the Second Circuit has explained, meals are presumed to be part of wages under the statute, *see Soler v. G. & U., Inc.*, 833 F.2d at 1109, and plaintiffs have presented nothing to rebut the presumption.

Defendants assert they can estimate the cost of meals by totaling the costs for food and food supplies as shown on invoices and checks, together with rent, utilities, and the pay and fringe benefits given food service employees. Dividing this total by the number of meals served overall, derived from various documents such as daily meal sign-in sheets would, they say, give the cost per meal. But while defendants submit samples of documents showing the costs of food and food supplies and the numbers of persons who signed in for each meal, they do not explain how the additional items of cost could be assessed.[4] Thus, rent and utilities, I presume, would fairly have to be apportioned into an amount

equal to the proportion that the kitchen facilities, dining room and whatever other relevant locations bore to the entire Center. If these "meal locations" were also used for other activities, a further calculation would have to be made to account for that portion of the location and/or that amount of time ever used there for purposes other than meals. Numerous similar problems are presented by the defendants' simple kitchen-sink approach to the determination of cost. Moreover, if the parties wish to adhere to the FLSA scheme, "reasonable cost ... is the cost of operation and maintenance including adequate depreciation plus a reasonable allowance ... for interest on the depreciated amount of capital invested by the employer," and those costs are to be "arrived at under good accounting principles." 29 C.F.R. § 531.3(c). Were we to make a determination in this case strictly according to the regulations, would we need expert testimony? Plaintiffs have given no guidance because they have not addressed defendants' methods of calculating the cost of meals—or the costs of the other benefits sought to be deducted—but have simply taken the high road, contending that no deductions at all are permissible and that damages should be set now as the simple difference between the minimum wage and the amount of money each plaintiff actually received.

greater amount if the Secretary of Labor has chosen not to sue and the litigation is left to the employees. The regulations provide three methods for the Administrator to determine reasonable cost: (1) the employer may calculate the reasonable costs "in accordance with the requirements set forth in [29 C.F.R.] § 531.3"; (2) the employer may request that a *determination of reasonable costs* be made by the Administrator; or (3) the employer may request that a determination of fair value be made by the Administrator. 29 C.F.R. § 531.33(a). Although not specified, (2) and (3) plainly refer to 29 C.F.R. §§ 531.4 and 531.5, respectively. Both of those sections require the Administrator to follow certain administrative procedures, including publication of the proposed determination in the Federal Register for comment, and would

thus be inapplicable to non-administrative determinations. Perhaps it is for this reason that courts, without explanation, have resorted to 29 C.F.R. § 531.3 in the absence of the Administrator, and perhaps as an inference from the language in 29 C.F.R. § 531.33(a) that under 29 C.F.R. § 531.3 the employer may calculate its own costs to submit to the Administrator.

4. They submit a schedule of apparently yearly totals of figures which they say were taken from their "income and expense statements," and a footnote on that schedule states, "14% of Rent and Utilities was used to calculate the food expenses," without further explanation. Affidavit of Jeffrey Grunberg, sworn to November 13, 1998, Exh. A.

Plaintiffs maintain that they have been waiting years to receive the money they are owed and should not be delayed any longer. I agree with this point. Defendants ask for an evidentiary hearing, but, as plaintiffs point out, defendants do not state why one is necessary or what would be achieved. It is quite clear that this case needs resolution. It is also clear, however, that counsel themselves share some responsibility for the lack thereof. The all-or-nothing approach by both sides has prevented meaningful discussion among the parties that could have by now ended this matter in a fair manner, and it has, as well, prevented the parties from supplying the court with aid and information that also could have brought resolution more expeditiously. For defendants to undertake complex calculations at this point, which would no doubt be challenged by plaintiffs at each step, makes no sense. It would be a waste of costly legal time and, more importantly, would further delay receipt of any award to any plaintiff. The result in the end, in any event, would be an estimate at best. The words of Robert M. Hayes in his August 1995 report are haunting:

It is my strong recommendation that parties to this suit use their best efforts to settle the dispute.... An intensive effort by all parties to resolve the suit is in order so the organizations involved in the litigation—the SSC, the Partnership, the Urban Justice Center, and the Coalition for the Homeless—can better focus on their primary missions. Given the vast needs of poor New Yorkers for legal assistance, it is disturbing to observe two of the City's best law firms expending their pro bono time on this dispute.

Report to the Board of Directors, Grand Central Partnership, Plaintiff's Trial Exh. 32, p. 61. It is with the foregoing in mind, together with the lack of authority and the lack of means for precision of cost calculation, that this Opinion is rendered.

■ The cost of meals shall be determined by adding together the amount paid by defendants for food and food supplies with the compensation paid to the three food service employees. No additional costs are to be included.[5] The resulting amount divided by the total number of meals served, as evidenced by the sign-in sheets, will yield an overall cost per meal, without regard to whether that meal was breakfast, lunch or dinner. (While it seems highly unlikely that the cost per meal will show to have been more than $1.00, which should be seen as the fair market value under the circumstances, it is the lower of the calculated cost or the cost of $1.00 which shall be charged. See 29 U.S.C. § 203(m); 29 C.F.R. § 531.3(c)). The total number of meals each plaintiff received is to be the number of times that plaintiff's name appears on the sign-in sheets.

b. *Shelter*

■ Defendants' effort to include as wages the cost of what is referred to by the parties as "shelter," meaning overnight stays at the Center, is rejected for several reasons. First, defendants' staff members, who, as indicated earlier, did the same types of work as plaintiffs, were required to have housing and did not receive shelter. Further, the PTE program required its participants to arrange for stable housing.

In addition, defendants' proffered calculation of cost would not lead to a reason-

5. While 29 C.F.R. § 531.3 would appear to allow for the inclusion of certain overhead costs as indicated above, it does not appear suited for the instant circumstance, nor would a proper application of it be worthwhile for the reasons already indicated. See also Opinion Letter, Fair Labor Standards Act, 1997 WL 998034 (DOL WAGE–HOUR) (Dep't of Labor, Wages and Hour Division, Sept. 8, 1997) (stating, in context of for-profit restaurant business, "[i]n determining the reasonable cost of meals furnished to employees, we would generally include only the actual cost to the employer of the food and the cost of its preparation.").

able result. They state that by "starting with the costs shown on [the Center's] income and expense statements, including rent, utilities, insurance, [and] building security," and dividing those expenses by the number of nights for which shelter was provided, as shown on sign-in sheets for overnight stays, the actual cost of shelter would result. Again, though, the proposal is rife with difficulties. Why the cost of providing shelter should include the costs associated with the other uses to which the Center was put, open as it was on a 24–hour basis, is not explained. Nor do defendants attempt to reconcile what would be, in effect, double counting of overhead costs such as rent and utilities if included in the calculation of shelter costs and also meal costs as they have proposed.

Moreover, defendants have supplied no authority that this shelter, even if they had customarily furnished it to regular employees and even if they could sustain their burden of showing its reasonable cost, could be deemed a part of wages. The Center did not provide beds; persons spending the night there, if they slept, did it in chairs. All of defendants' authority for allowing the cost relates to lodging. Thus, the statute and the regulations speak of "lodging." Defendants' very quotation from *Soler v. G. & U., Inc.*, 833 F.2d at 1108, pertains to "housing facilities" and states, "An employee has to *reside* somewhere, and therefore *rental payments* for the employee are usual and customary items of his or her living expenses." (Emphasis added.) Defendants' Memorandum of Law, p. 10. That some of the plaintiffs spent some nights at the Center hardly seems within the definition of lodging contemplated by Congress, the Department of Labor or the courts.

Finally, 29 C.F.R. § 531.31 states, "Facilities furnished in violation of any Federal, State, or local law, ordinance or pro-

hibition will not be considered facilities 'customarily' furnished." Both litigation and administrative regulations have established that centers like the one here do not meet state requirements for overnight lodging for the home-less. *See* N.Y. Comp.Codes. R. & Regs. Tit. 18, § 352.3(g); New York State Department of Social Services Administrative Directive, 83 ADM–47 (September 1983); *McCain v. Dinkins*, 84 N.Y.2d 216, 221–22, 616 N.Y.S.2d 335, 338, 639 N.E.2d 1132 (1994), and cases cited therein.

### c. *Counseling*

 Counseling is not to be considered part of wages for a number of reasons. First, defendants present no evidence that their staff members were able to partake of the counseling services at the Center or that counseling was otherwise customarily furnished to those employees. Moreover, this is another issue for which there is no precisely applicable authority because of the circumstances of this case. Plaintiffs, now placed in the position of employees, were "employed" by defendants only by reason of the PTE program. Part of that program was the requirement that they attend counseling sessions and take part in at least three workshops per week. By the letter of defendants' own rules, failure to take part in counseling would have meant rejection from the PTE program, without which they would not have been employees. Surely, to now consider counseling as compensation would be inequitable. (Moreover, it could hardly be seen to have been "voluntary and uncoerced.") In any event, if for no other reason, it is sufficient to deny deduction for counseling because it would reward those plaintiffs who violated the program rules by not attending counseling by allowing them more compensation than those who tried to do what was required to be done.[6]

6. I also note that defendants again have not met their burden of providing a method for calculating the reasonable cost of counseling for each of the plaintiffs. Defendants state that the cost of counseling can be calculated by dividing each counselor's salary by an eight-hour day and 52–week year to arrive at an hourly rate, and applying that to the

#### d. *Tokens*

■ The final item defendants contend was part of plaintiffs' wages was the cost of subway tokens given to them. But the parties have provided such a dearth of information about such tokens that an assessment of the issue is difficult. Indeed, the only information provided are six sample "token receipts," apparently executed when tokens were provided. There is no issue of cost, since the cost of a token is the cost of a token. However, the purpose of the travel for which tokens were provided to plaintiffs is not explained by the parties. Two of the forms, for example, show the travel by the recipients to have been to and from welfare offices. The top of the form contains abbreviated codes, apparently indicating the purpose of the travel. The meaning of the abbreviations, however, is not self-apparent. Clearly, at least some of the travel purposes for which tokens could be given according to the form were in connection with the work a recipient might have been employed to do, such as "OUTRCH." To the extent tokens were provided for travel in connection with such work, they are not part of wages. To the extent tokens were given to a plaintiff for his or her personal benefit, such as to pick up his or her welfare check (as opposed to staffing or cleaning a welfare office), their cost may be deducted. *See* 29 C.F.R. § 531.32(a) and (c) (explaining transportation that is and is not "an incident of and necessary to the employment"). Thus, defendants may consider the cost of tokens insofar as they can demonstrate the tokens were not provided for PTE work-related matters.

#### 3. *Issues Relating to Time Records of Individual Plaintiffs*

Plaintiffs' and defendants' counsel have agreed on the hours of work recorded by 182 plaintiffs. However, defendants now contend that some of those hours were "excused" time, during which the plaintiff may have been ill, attended social service appointments, or was otherwise absent with permission, and that such hours should not be compensable. Defendants, however, have not said whether the excused time was something which was deemed part of the work program at the time; *i.e.,* was the compensation the plaintiffs did receive at that time reduced to reflect these hours or was payment for these hours made? Moreover, defendants have not stated whether their regular staff members at the time received their pay during such sick time, etc. Defendants have also failed to provide the numbers of such hours for any of the plaintiffs or the alternative totals they propose.

A conference will be scheduled for February 17, 2000. Unless defendants can answer these questions and provide the foregoing information at that time, the recorded numbers shall stand. The parties are to confer prior thereto in an effort to resolve this issue.[7]

---

number of counseling sessions each plaintiff attended as reflected on a database. However, there is no evidence to suggest that the counselors' salaries per hour represent the cost to defendants of each counseling session, and such would not seem logically to be the case, for many reasons. For example, counselors presumably took part in workshops and sessions that included many persons at the Center at once, PTE participants and nonparticipants. Indeed, at least some counseling sessions would have taken place even if no plaintiffs were present. The determination of how much each participant's share was worth would require apportioning each session per hour by the number of persons present and determining what fractional relationship would be applicable to one or more plaintiffs present. Even if logistically doable, the results would still not be necessarily reliable. Evidence would have to be presented as to additional facts, such as whether each counselor spent an eight-hour day at the Center and whether such hours were spent exclusively at such sessions.

7. The court humbly suggests that defendants forego the issue. Even if such deductions from pay turn out to be technically warranted, the effort required to examine each record and redo the calculations would seem unwarranted.

There are 12 additional proposed plaintiffs—the FLSA contains an "opt-in" procedure—*for whom no time records have been found by defendants.*[8] Defendants argue that these plaintiffs have the burden of showing that they actually worked before they can receive damages. The plaintiffs respond that since the FLSA mandates the burden was on defendants to keep records, plaintiffs cannot be denied recovery for defendants' lapses. Moreover, they note that defendants did not object to the inclusion in the plaintiff class of the individuals in question, and I note that at least two of these people were, moreover, named plaintiffs.

■ It is difficult to understand how defendants can find *no* records for these people given all the various types of records that were generally kept—time cards, time sheets, overtime slips, payroll records, "signature" sheets, performance evaluations or progress notes—and the fact that adequate time records apparently exist for everyone else. I do not understand defendants to be contending, however, that whether or not these plaintiffs were participants in the PTE program is in dispute, but rather that the problem is that there are no existing work-related records.[9] Yet it is also difficult to understand how any plaintiff could have participated in the PTE program without doing some work, *and no explanation is offered.*

It is too late in the proceedings for defendants now to be disputing their liability vis-a-vis individual plaintiffs in the PTE program. The question is how to calculate the damages due each of these plaintiffs. Plaintiffs propose that each plaintiff for whom no records are available be awarded the average of the amounts to be awarded to the 182 plaintiffs with records. Defendants, who merely argue these plaintiffs must first come forward with evidence, reject plaintiffs' approach without offering an alternative method of calculation.

■ "[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes ... [t]he solution is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Evidence of the time worked by similarly situated employees can be used to deal with an absence of records. For instance, in *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d at 66–68, the court upheld the use of a sample of 2.5% of all affected employees to determine back wages due the rest. In the instant case, by contrast, records are available for 182 plaintiffs and estimates are needed for only these 12.

In *Martin v. Tony and Susan Alamo Foundation, supra,* the court, with less of a record than is available here, ordered the use of estimates of wages provided by the Secretary of Labor for employees for whom there were no time records—a "pattern and practice" based on the information provided by the other employees who testified about their work. 952 F.2d at 1051. Plaintiff's similar method of calculation is reasonable and shall be adopted.

### 4. *Withholding for Taxes*

Defendants have calculated the amount of income and FICA taxes that they propose to withhold based on the hourly rec-

---

8. Defendants assert that they have produced the records for William J. Johnson. If whether or not there are two William Johnsons remains an issue, it shall be discussed during the conference on February 17.

9. If whether or not these individuals were actually PTE participants is in dispute, they themselves would bear the burden of showing they were. While they need not establish precise amounts of work in the absence of records, they must establish that they did perform work. *See Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 66–67 (2d Cir.1997). I do note that Judge Sotomayor found that "[a]t one time or another between 1990 and 1995, each plaintiff participated in ... the PTE program." 997 F.Supp. at 511.

ords previously agreed-upon (and apparently without deduction from the wages for any of those items for which defendants have sought deduction herein). Plaintiffs argue that no deduction for withholding is warranted, that defendants' calculations do not take each plaintiff's individual tax status into account, and that the court should thus leave the responsibility of payment of taxes to each plaintiff.

■ Although exceptions can be found, the courts are generally of one mind that withholding from back wages must be made, whether in the FLSA context or analogous employment discrimination contexts. *See, e.g., Thomas v. Fairfax,* 758 F.Supp. 353, 367 n. 26 (E.D.Va.1991); *Freeman v. Blake Co.,* 84 F.Supp. 700, 704 (D.Mass.1949); *Keen v. Mid–Continent Petroleum Corp.,* 63 F.Supp. 120, 1422–43 (N.D.Iowa 1945), *aff'd,* 157 F.2d 310 (8th Cir.1946). *See also Blim v. Western Elec. Co.,* 731 F.2d 1473, 1480 n. 2 (10th Cir.), *cert. denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984); *Melani v. Board of Higher Educ.,* 652 F.Supp. 43 (S.D.N.Y. 1986), *aff'd,* 814 F.2d 653 (2d Cir.1987). This is so because it is required by the tax laws. *See* 26 U.S.C. § 3402(a)(1); Rev. Rul. 72–268, 1972–1 C.B. 313; Rev. Rul. 55–203, 1955–1 C.B. 114. There is no justifiable reason to depart from this practice in this case. Indeed, a primary purpose of the PTE program was for its participants to develop skills for future employment and independent living. There is no reason the plaintiffs here should be excused from following the procedure that must be followed by all employees in this country of filing the appropriate tax forms and receiving any refund from the tax authorities that may be due for excess withholding. The court in *Thomas v. Fairfax* summed up this issue nicely:

> Courts do not disagree ... with respect to the general principle that employer-paid back pay in satisfaction of a judgment constitutes wages for purposes of income taxes and withholding, that tax authorities must receive their due, and

that neither plaintiffs nor defendants should receive wind-falls.... Here, the Court concludes that these principles may best be satisfied by having the [defendant] withhold taxes and remit them to the appropriate revenue authorities; plaintiffs may then seek to reclaim any excess withholding according to their individual circumstances. This process will most closely approximate the actual pay that plaintiffs should have received.

758 F.Supp. at 368, n. 26. It is true, however, that the plaintiffs here would most likely be subject to minimum withholding amounts since they were homeless and receiving only minimum wage. Counsel should consult to ensure that proper amounts are withheld and that the funds are remitted promptly to the taxing authorities.

*Conclusion*

The parties are jointly to calculate the amount owed to each plaintiff in accordance with this Opinion. A conference will be scheduled for February 17 at 2:30 p.m. in Courtroom 11C only for the specific purposes indicated herein. The court hopes that the parties can agree as to those limited remaining issues to avoid the necessity for such conference. The court is available by telephone or in person if the parties think earlier discussion would be helpful.

The cross-motions to compel further discovery are denied. If any limited and specific additional items are needed to make the calculations necessary under this Opinion, the court hopes the parties will work together to find them. If necessary, this, too, can be discussed at the February 17 conference or by telephone conference.

In any event, the parties will be expected to submit to the court no later than March 15 a stipulated schedule showing the back pay amount and liquidated damage amount that will be made by defendants to each plaintiff. Any problems that arise and that cannot be solved by the parties acting in good faith should be

brought promptly to the attention of the court so that this deadline will be met.[10]

SO ORDERED.

---

10. Judge Sotomayor has ordered that defendants also pay reasonable attorney's fees to the plaintiffs. Plaintiffs, however, have not submitted any request for fees or information concerning them. The court does not wish to delay entry of judgment that it expects to be made shortly after March 15. It is envisioned, however, that since the parties herein have apparently been unable to work amicably, that any fee request will be challenged and require additional time. If indeed plaintiffs' *pro bono* counsel will be seeking fees, they should be the subject of a separate judgment, and the scheduling of documentary submissions on them can be discussed at the February 17 conference or by telephone conference.