**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILLIAM KIM HENSLEY,
             *Plaintiff-Appellee,*

v.

FRED R. HORNE,
             *Defendant-Appellant,*

and

CITY OF DANVILLE, VIRGINIA,
             *Defendant.*

No. 01-1977

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Norman K. Moon, District Judge.
(CA-00-36-4)

Argued: February 27, 2002

Decided: July 16, 2002

Before WIDENER and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Dismissed by published opinion. Judge Widener wrote the opinion in which Judge King and Senior Judge Hamilton joined.

---

## COUNSEL

**ARGUED:** Jeremy E. Carroll, DANIEL, VAUGHAN, MEDLEY & SMITHERMAN, P.C., Danville, Virginia, for Appellant. Gary L. Bengston, Danville, Virginia, for Appellee.

**OPINION**

WIDENER, Circuit Judge:

Fred Horne (defendant) challenges the district court's order denying his motion for summary judgment as to William Hensley's (plaintiff) free speech claim. Plaintiff sued defendant in his individual and official capacity. Finding we have no appellate jurisdiction under *Johnson v. Jones*, 515 U.S. 304 (1995), as to the individual capacity claim, we dismiss the appeal.

The facts, as found by the district court, are as follows. Plaintiff William Hensley worked for the City of Danville as the Director of the City's Division of Power and Light. Defendant Fred Horne, the Director of the Department of Utilities, supervised plaintiff's division.

Two relevant series of events occurred in this case. First, in early 2000, City officials investigated alleged misconduct within the Division of Power and Light. Two employees in this Division were reprimanded, one being Hensley. City officials later investigated another alleged incident of misconduct involving Hensley in that Hensley had purchased a Ham radio antenna through a City account for his own personal use. He paid for the antenna with his own funds; however, City officials thought this act might be considered as an appearance of impropriety. By late February 2000, Horne knew that Hensley had purchased the antenna using the City account. On March 10, 2000, Horne informed Hensley that he had no plans to fire him. On March 23, 2000, two weeks after Horne announced he had no plans to fire Hensley, Horne sent Hensley a letter immediately suspending Hensley for the antenna purchase. This letter informed Hensley that he would be terminated on March 28, 2000, but allowed him an opportunity to respond in writing to the allegations underlying his termination. Hensley responded, denying all allegations, and requested a hearing prior to termination. Plaintiff, who was sick at the time, failed to attend the hearing, which was held as scheduled for March 27, 2000, and was fired the next day.

The second series of events concern a sexual harassment complaint filed against Horne. These events ran concurrently with the antenna incident. Kathy Barksdale (Miss Barksdale) complained to Hensley,

her immediate supervisor, about unwanted physical contact by Horne. She also complained regarding Horne's insistence that she work with him on Saturday. People rarely worked on Saturday, and she was hesitant because no one else would likely be in the office. Hensley referred her directly to human resources. An independent investigator was hired by the City in March of 2000 to explore Miss Barksdale's allegations. Ultimately, the district court related that the investigator found no basis for the sexual harassment claims.

On March 17, 2000, Horne held a staff meeting which Hensley attended. Defendant allegedly announced that "if [he] went down [from the sexual harassment claim and investigation], he was going to take others down with him." Hensley claims that Horne then instructed him not to say anything negative to the investigators about Horne. On March 22, 2000, plaintiff was interviewed by investigators. When Horne asked plaintiff about his responses, plaintiff responded that he "told the truth." Plaintiff claimed in the district court that he told the investigators that he witnessed Horne touch Miss Barksdale on the shoulder and arm. Hensley received his termination letter from Horne the next day.

Plaintiff filed multiple causes of action under 42 U.S.C. §1983 against both defendant and the City of Danville alleging constitutional injuries as a result of his March 28, 2000 discharge. After amendment of the complaint by Hensley, the district court entered judgment in favor of the City on all claims, which is not appealed. It also entered judgment in favor of Horne on all claims except that of Hensley's claim that he was fired for his exercise of free speech, the treatment of which is the sole issue on appeal.

This claim was brought against Horne in his individual and official capacity.[1] As to the qualified immunity defense for the free speech claim against defendant in his individual capacity, under *Johnson v. Jones*, 515 U.S. 304 (1995), and cases following, we conclude that this appeal is an attempt by Horne to have us review the correctness

---

[1]There has been no appeal of the judgment in favor of the City, thus no judgment would lie against Horne in his official capacity, the City being liable for any judgment. This leaves as the sole issue on appeal and on remand the question of liability of Horne in his individual capacity.

of, rather than the existence of, a genuine issue of fact for trial, so we dismiss for want of appellate jurisdiction.

Under 28 U.S.C. § 1291, we have jurisdiction to hear appeals from final orders. Interlocutory appeals are not generally appealable, and permission for such appeals must be granted under 28 U.S.C. § 1292. Denials of summary judgment are not final orders and are, thus, not appealable absent leave of court previously obtained in the ordinary case.

In *Mitchell v. Forsyth*, 472 US. 511 (1995), however, the Court held that review of a defendant's qualified immunity defense was a final decision under 28 U.S.C. § 1291 and immediately appealable under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949). Following *Mitchell*, in *Johnson v. Jones*, 515 U.S. 304 (1995), the Court held that a district court's pretrial order deciding "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial" was not an appealable order. *Johnson*, 515 U.S. at 320.

Under *Pickering v. Board of Education*, 391 U.S. 563 (1968), a public employee has a First Amendment right to speak out on matters of public concern. The district court held, and we agree, that Hensley had such a free speech right under *Pickering* as a matter of public concern to speak to the investigators the City employed to inquire into the claim of Miss Barksdale, that she had been sexually harassed on the job by Horne. That item is hardly contested, if at all. And we add that the rule in *Pickering* was clearly established by numerous cases in this circuit at the time that Hensley spoke to the investigators in this case. Under *Mitchell*, so far as the matter of law is concerned, all an appellate court need determine is "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged acts." *Mitchell*, 472 U.S. at 528. And under *Behrens v. Pelletier*, 516 US. 299 (1996), "[i]f what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim, and hence there is no 'final decision' under *Cohen* and *Mitchell*." *Behrens*, 516 U.S. at 313.

The district court laid out the facts it found to support its summary judgment conclusion:

Considering the evidence in the light most favorable to the Plaintiff, the sequence of events culminating in Plaintiff's termination transpired as follows: (1) on March 10, 2000, Horne, with all information relating to the antenna incident in hand, told the Plaintiff that he had no plans to fire him; (2) at a staff meeting held on March 17, 2000, Horne threatened that "if (he) went down (as a result of the sexual harassment investigation), he was going to take others down with him"; (3) Horne warned Plaintiff not to say anything negative about him to investigators; (4) Plaintiff met with investigators on March 22, 2000, and soon thereafter informed Horne that he had "told the truth" which according to Plaintiff was that Horne touched Barksdale on the arm and shoulder on multiple occasions; (5) no new evidence relating to the antenna incident was uncovered between [March] 10 and [March] 23, 2000; and [March] 23, 2000, in spite of Horne's assurance of [March] 10,[2] Plaintiff was fired for purchasing the antenna using a City account, a purchase that was made well before the then on-going sexual harassment investigation of Horne. J.A. 457.

As noted, the district court held, and we agree, that Hensley had a free speech right to speak to the investigators the City employed to inquire into the claim of Miss Barksdale, that she had been sexually harassed on the job by Horne.

The next question is whether Hensley was fired for purchasing the Ham antenna using the City's account, or whether he was fired for speaking to the investigators who had been employed by the City to inquire into the claim of Miss Barksdale that she had been sexually harassed by Horne.

The district court, in consideration of the facts, the principal ones having been related in the quoted passage above, was of opinion that there was a genuine issue of material fact as to whether Hensley was fired because of the interview he gave to the investigators inquiring

---

[2]The district court accidently wrote "May" when it meant March. No relevant events happened in May; therefore, we, as do the parties, assume the court meant March.

into the sexual harassment claim against Horne. We agree with the district court's analysis. That being true, *Behrens* is the controlling precedent in this case. Under *Behrens*, if the question is "whether the evidence *could* support the finding that particular conduct occurred," (italics added) there is no final order. *Behrens*, 516 U.S. at 313. The district court in this case was of opinion that the evidence *could* support a finding that Hensley was fired because of his interview with the investigator, which makes the question of the reason for Hensley's discharge a genuine issue of material fact, Horne claiming that Hensley's discharge was on account of the purchase of the antenna on the City's account.

Accordingly, the appeal of Horne must be dismissed and the case remanded to the district court for further proceedings.

*APPEAL DISMISSED*