OPINION
WILLIAMS, Circuit Judge.
This appeal arises out of a claim for unpaid minimum wages and overtime com *585 pensation brought by twenty-four individuals who served as caretakers in Baltimore County, Maryland parks (Caretakers). The Caretakers allege that Baltimore County, their employer,[1] violated the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201-209 (1998), and the Maryland Wage and Hour Law (MWHL), Md.Code Ann., Labor and Employment, §§ 3-401 et seq. (1999), by failing to compensate them adequately for their work. The district court, concluding that the parties had reached a “reasonable agreement” as provided under 29 C.F.R. § 785.23 (2001), entered an order granting summary judgment to Baltimore Parks. We affirm the judgment of the district court.
I.
Prior to August 30, 1999, when the program was discontinued, Baltimore County operated a caretaker program that offered free accommodation to two adult individuals, usually a married couple, who agreed to serve as Caretakers in a public park. All twelve Caretaker couples bringing the present action signed a “Baltimore County Department of Recreation and Parks Caretakers Agreement” (the Caretakers’ Agreement) in their joint capacity. Under the Caretakers’ Agreement, each Caretaker couple was provided with rent-free accommodation and water at a home located in or near the park to which the couple was assigned. In exchange, one of the Caretakers in each couple was required to (1) be continuously present in the park; (2) clean the comfort station and other park areas, as necessary; (3) tour the park in the morning and open the park gate to allow public access; (4) tour the park in the evening and close the park gate; and (5) maintain a Daily Caretaker’s Log of any park maintenance required due to damage or vandalism. Discovery revealed that at least one member of each Caretaker couple, with one possible exception, maintained full- or part-time employment outside of the park. In some cases, both worked outside the park. Caretakers were permitted to have extended absences from the park, but seven days advance written notice was required, and the Caretakers were responsible for finding suitable substitutes.
On March 5, 1999, Baltimore County announced its decision to terminate the Caretaker program after August 30, 1999, replacing the Caretakers with part-time employee park attendants. On August 19, 1999, twenty-four individuals who had been serving as Caretakers for durations from three years to over twenty years filed a complaint in the United States District Court for the District of Maryland. The Caretakers alleged that Baltimore County failed to pay the minimum wage required under 29 U.S.C.A. § 206(a)(1) (setting minimum wage at $4.75 an hour beginning on October 1,1996, and $5.15 an hour beginning on September 1,1997), and overtime as required under 29 U.S.C.A. § 207(a)(1) (requiring compensation at least one and one-half times the regular rate for hours over forty a week). The Caretakers also claimed that Baltimore County violated the MWHL by failing to pay the federal minimum wage, Md.Code Ann., Labor and Employment, § 3-413(1) (providing that employers pay “to each employee who is subject to both the federal Act and this subtitle, at least the mini *586 mum wage for that employee under the federal Act”), and by failing to pay overtime, Md.Code Ann., Labor and Employment, § 3-415(a) (requiring “each employer [to] pay an overtime wage of at least 1.5 times the usual hourly wage”).
After discovery, the Caretakers and Baltimore County filed cross-motions for summary judgment. The district court applied 29 C.F.R. § 785.23, a regulation interpreting the FLSA, because the Caretakers were residing on Baltimore County’s premises. Section 785.23 provides as follows:
An employee who resides on his employer’s premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home.
29 C.F.R. § 785.23. The district court concluded that the Caretakers’ Agreement was a reasonable agreement that took into consideration all of the pertinent facts and thus granted summary judgment in favor of Baltimore County.[2] The Caretakers filed a timely notice of appeal, claiming that the district court erred in finding that the Caretakers’ Agreement constituted a “reasonable agreement” under 29 C.F.R. § 785.23.[3]
We review a grant of summary judgment de novo, viewing all facts and inferences in the light most favorable to the nonmoving party. Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th Cir.2001). Summary judgment is appropriate if “there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c).
II.
The Caretakers seek compensation for every hour that they were required to be present in the park. As discussed below, we conclude that the Caretakers’ twenty-four hour presence was not compensable “work” as a matter of law. Moreover, any claim that the Caretakers’ Agreement violates the FLSA for failure to compensate the Caretakers adequately for the “work” they did perform would also fail as a matter of law. Accordingly, we agree with the district court that the Caretakers failed to establish a genuine issue of material fact regarding whether their agreement is reasonable. Consequently, Baltimore County is entitled to judgment as a matter of law.
A.
As described above, the Caretakers were required to provide twenty-four hour *587 park presence for security purposes. Baltimore County wanted a constant presence in the park to deter vandalism and to have someone on hand to summon the police, fire department, or an ambulance if an irregular situation arose. In essence, their twenty-four hour duty was to live in the park “waiting” for an emergency situation to develop. The Caretakers assert that because their only compensation for being on duty twenty-four hours a day was housing and water use, the Caretakers’ Agreement violated the minimum wage and overtime provisions of the FLSA on its face. In Skidmore v. Swift & Co., U.S. 134 (1944), the Supreme Court addressed the issue of whether “waiting time” was considered working time under the FLSA. Explaining that there is no legal formula to resolve the issue, the Court stated the following:
Whether in a concrete case such time falls within or without the [FLSA] is a question of fact to be resolved by appropriate findings of the trial court. This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to waiting time, and all of the surrounding circumstances. Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged.
323 U.S. at 136-37, 65 S.Ct. 161 (citation omitted). “The critical question, the Court has suggested, is ‘whether time is spent predominantly for the employer’s benefit or for the employee’s.’ ” Roy v. County of Lexington, 141 F.3d 533, 544 (4th Cir.1998) (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944)). The Caretakers argue that under the Skidmore test, summary judgment is inappropriate because whether they were “engaged to wait” or “waiting to be engaged” is itself a material issue of factual dispute. This court, however, previously has rejected such a reading of Skidmore by determining that an employee was “waiting to be engaged” as a matter of law. See Kelly v. Hines-Rinaldi Funeral Home, Inc., 847 F.2d 147, 148 (4th Cir. 1988) (applying the Skidmore test and concluding, as a matter of law, that time the employees spent “living” in an apartment at a funeral home was time “waiting to be engaged” despite their having to answer the phone at any hour during the night and pick up corpses if necessary). Moreover, 29 C.F.R. § 785.23 provides a presumption that when an employee resides on his employer’s premises, he is not working the entire time he is on the premises. See Jarrett v. ERC Properties, Inc., 211 F.3d 1078, 1082 (8th Cir.2000) (noting that no evidence was presented to overcome the presumption). In this case, the Caretakers have failed to produce specific facts to overcome the presumption and support their assertion that they were “working” within the meaning of the FLSA the entire time they were present in the park. The unrefuted evidence demonstrates that an overwhelming amount of the time that the Caretakers were required to be present in the park was available for uninterrupted personal pursuits and use of the house. For example, the Caretakers were free to watch television, eat, and sleep. There is no indication that interruptions of private pursuits were frequent enough to render such time work time, that is, time spent predominantly for the benefit of Baltimore County.[4] The time the Caretakers spent merely waiting for an occurrence requiring their attention, therefore, was time during *588 which they were waiting to be engaged.[5] See Kelly, 847 F.2d at 148 (“While there was no clear agreement between the parties on the exact nature of the time in question, practical considerations guide us to conclude that [the employee] waited to be engaged.”); see also Service Employees International Union, Local 102 v. County of San Diego, 60 F.3d 1346, 1355 (9th Cir.1994) (concluding that requirement of Park Ranger to be on-call to respond to inquiries and enforce park rules was not so restrictive that on-call time could not be used for personal activities). Because the Caretakers have failed to set forth any specific facts in response to Baltimore County’s properly-supported motion for summary judgment, we affirm the district court’s conclusion that they were “waiting to be engaged” as a matter of law.
B.
While the Caretakers were not working every hour they were in the park, clearly some of the work they performed while living in the park was compensable under the FLSA. Specifically, the Caretakers were required to clean the comfort station and other park areas, as necessary; tour the park twice a day; open and close the park; maintain a Daily Caretaker’s Log of any park maintenance required due to damage or vandalism; and summon authorities when emergency situations arose (the FLSA work).[6] As 29 C.F.R. § 785.23 recognizes, however, it would be difficult to determine the exact hours the Caretakers worked. Unsupervised employees living on their employer’s premises may divide their time between “work” and personal pursuits, and the work performed is often sporadic in nature. As the district court pointed out, “[the FLSA work] varied from day-to-day based on a host of factors, some as simple as the season of the year (e.g., comfort stations were closed during the late fall and winter, and consequently, Caretakers were not required to clean *589 them).” (J.A. at 994.) Moreover, it would have been administratively burdensome to record the time it took to complete every duty. In such circumstances, “any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.” 29 C.F.R. § 785.23. An agreement is acceptable under 29 C.F.R. § 785.23 if it “falls within a broad zone of reasonableness, considering its terms and all of the facts and circumstances of the parties’ relationship.” Brock v. City of Cincinnati 236 F.3d 793, 806 (6th Cir. 2001).
We agree with the district court that there are no genuine issues of material fact regarding whether the Caretakers’ Agreement was reasonable under 29 C.F.R. § 785.23.[7] In exchange for the FLSA work, the Caretakers received rent-free accommodation in or near a county park and free water, which is a substantial benefit. See infra at 590 (calculating approximate rental value of Caretakers’ houses). Furthermore, there were clearly other benefits to living in the park that would be difficult to quantify. Living in the park was a unique opportunity for the Caretakers — an environment that most people go out of their way to visit was immediately available to them.[8] See Brock, 236 F.3d at 807 (explaining that non-monetary support the city provided reasonably compensated the plaintiffs for any deficiency in their compensation).
Although the Caretakers’ Agreement appears reasonable on its face, the Caretakers argue that the district court erred by failing to make a specific finding with regard to the actual number of hours that the Caretakers worked. See id. (“The actual amount of time spent in FLSA “work,’ if reliably ascertained, is a reference point for a range of reasonable agreements, a range that is widened by a variety of non-monetary costs and benefits.”). Because the purpose of 29 C.F.R. § 785.23 is to address situations in which it is difficult, if not impossible, to determine the exact time worked, a finding of the exact hours worked may not be required to determine whether the agreement was reasonable. Moreover, accepting the Caretakers’ highest estimate of the time they spent on FLSA work, the rental value of the Caretakers’ residences compensated them at a rate above the minimum wage. The average rental value for the Caretakers’ residences, according to the Caretaker’s Manual, was $700 per month.[9] Thus, *590 the Caretaker couple received approximately $23 a day in exchange for the FLSA work. How they chose to divide the FLSA work, and thus the compensation, is irrelevant to whether the agreement reasonably compensates for the specified tasks. The federal minimum wage has been $5.15 an hour since September 1, 1997.[10] 29 U.S.C.A. § 206(a)(1). Dividing the weekly pay by the minimum hourly wage, we conclude that at the minimum wage each Caretaker couple was compensated for no more than 4.5 hours of work per day, approximately 32 hours per week.[11] The Caretakers have presented no evidence demonstrating that compensation for 4.5 hours per day under-approximated the actual amount of FLSA work they performed. One of the Caretakers specifically testified at a deposition that it took between 3 and 4 hours a day to complete the tasks.[12] Because the Caretakers have presented no evidence in response to the summary judgment motion that indicates that the FLSA work engaged each Caretaker couple for more than 32 hours a week, we agree with the district court’s conclusion that the rent-free accommodation compensated them well above the minimum wage for the work they performed.[13] Furthermore, because Baltimore County paid the Caretakers no *591 less than the minimum wage under the FLSA, the agreement also does not violate the minimum wage or overtime compensation provisions of the MWHL. Md.Code Ann., Labor and Employment, § 3-413 (requiring employers to pay at least the minimum wage under the FLSA).
III.
The Caretakers have not set forth any specific facts to support their claim that the Caretakers’ Agreement is unreasonable under 29 C.F.R. § 785.23. During their twenty-four hour duty, the Caretakers were waiting to be engaged and thus not performing compensable work for every hour that they were present in the park. In light of the nature and unpredictability of the Caretakers’ duties, the district court was correct to conclude that rent-free accommodation in exchange for serving as a Caretaker was a reasonable agreement as a matter of law. Indeed, there is no indication that the value of the rent-free accommodation under-compensated the Caretakers for the FLSA work they performed. Because the uncontroverted facts with regard to the Caretakers’ claims for unpaid minimum wages and overtime compensation demonstrate that Baltimore County is entitled to judgment as a matter of law, the district court’s entry of summary judgment in favor of Baltimore County is

AFFIRMED.

. The issue of whether the Caretakers are "employees” of Baltimore County for the purposes of the FLSA has not been resolved. The agreement they signed specifically states that "[t]he caretaker is classified as a Tenant/Independent Contractor with Baltimore County and is in no way considered to be an employee of Baltimore County.” (J.A. at 594.) Moreover, there is no evidence that the Caretakers reported the rental value of their accommodations as income. For the purposes of this appeal, however, we will assume, without deciding, that the Caretakers are employees of Baltimore County.

. The Caretakers argue that the district court erred by applying 29 C.F.R. § 785.23 because the regulation was outside the scope of an earlier order providing that “discovery and trial shall proceed with respect to issues related to ... the hours per week (or month) for which the Plaintiffs are to be considered as working.” (J.A. at 69.) Because § 785.23 addresses when an employee residing on an employer’s premises is working, it is not outside the scope of the district court's order.

. The Caretakers also argue that the district court erred by denying their motion for summary judgment. Denials of summary judgment, however, are not final orders and, thus, are not generally appealable. See Hensley v. Horne, 297 F.3d 344, 347 (4th Cir.2002).

. As noted above, the Caretakers were also free to, and did, pursue employment outside of the park. See Supra at 585.

. The conclusion that the Caretakers were "waiting to be engaged” as a matter of law is not, as the dissent suggests, contrary to Skid-more 's "fact-based approach.” Post at 593. Instead, as in Kelly, the determination that the Caretakers, while merely living in the park, were "waiting to be engaged” was based on the facts of the case. Specifically, the evidence presented by the Caretakers demonstrates that other than a set list of duties, which were compensable and are discussed in part II.B, infra, the Caretakers’ time, both at night and during the day, was their own for personal pursuits, and interruptions of their personal time were infrequent. The Caretakers have failed, in other words, to present evidence to support their claim that the time spent living in the park was time in which they were engaged to wait, that is, time spent predominantly for Baltimore County's benefit. Our holding, therefore, does not alter Skidmore's fact-based inquiry, but rather, as in Kelly, applies the fundamental principle that a trial on a factual issue, such as whether time spent living on an employer’s premises is primarily for the employee’s benefit or the employer's, is only necessary when it "may reasonably be resolved in favor of either party.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

. The district court did not consider whether any of these duties fall under the FLSA’s de minimis doctrine. See, e.g., Brock v. City of Cincinnati, 236 F.3d 793, 804 (6th Cir.2001) (explaining that courts "treat theoretically compensable work as noncompensable under the FLSA when the amount of such work is negligible”). Most courts, including the Fourth Circuit, treat daily periods of approximately 10 minutes as de minimis. See, e.g., E. I. du Pont De Nemours & Co. v. Harrup, 227 F. 2d 133, 135-36 (4th Cir.1955); Lindow v. United States, 738 F.2d 1057, 1062 (9th Cir. 1984). There is no direct evidence that any of the Caretakers’ tasks took less than 10 minutes to complete. Therefore, in viewing the record in a light most favorable to the Caretakers, we will assume that none of the Caretakers’ tasks were de minimis.

. The Caretakers argue that the district court incorrectly applied a subjective, rather than an objective, standard to determine the reasonableness of the Caretakers’ Agreement. Although we agree that 29 C.F.R. § 785.23 requires an agreement to be objectively reasonable, a review of the record makes clear that the district court applied the correct legal standard. Specifically, after concluding that the Caretakers had an overwhelming amount of time for personal pursuits, the district court determined that the agreement was objectively reasonable because a consistent work schedule for the work that was performed would have been difficult to develop and the Caretakers were compensated well above the minimum wage for their work. (J.A. at 996-97.) The district court relied on the Caretakers’ subjective opinion only to show that the Caretakers, prior to the termination of the program, agreed with the conelusion ultimately reached by the court that the agreement was objectively reasonable: "They realized full well that they were reasonably compensated and that the Agreement was more than fair to them.” (J.A. at 997.)

. In deposition testimony, one Caretaker explained his fondness of living in the park as follows: "I got attached to the park. I mean, I really got attached to it, and I really don’t want to live anywhere else. I like it down there. It's like living in the city and the ... country at the same time.” (J.A. at 402-03.)

. Baltimore County made this estimate in a report demonstrating the value of the services rendered by the Caretakers. The report concluded that "by utilizing a caretaker, in lieu of an 'around-the-clock' park attendant, Baltimore County is able to realize a cost savings of [$30,582 a year].” (J.A. at 630.) The *590 Caretakers argue that this report demonstrates that Baltimore County willfully circumvented the requirements of the FLSA to enjoy this savings. The possibility that an employee could have received a more favorable agreement, however, does not make the Caretaker Agreement unreasonable. Brock, 236 F.3d at 806 (''[A] court must ascertain whether this agreement falls within a broad zone of reasonableness.”). Moreover, it is unlikely that a park attendant would enjoy the same freedom to pursue personal pursuits as did the Caretakers.

. Prior to September 1, 1997, the minimum wage was $4.75 per hour. 29 U.S.C.A. § 206(a)(1). For simplicity’s sake, we assume that the higher rate of $5.15 per hour applies to the Caretakers' entire claim even though the lower pre-September 1, 1997 rate may apply to a portion of the Caretakers’ claim. The Caretakers filed their claim on August 19, 1999, and there is a two-year statute of limitations for FLSA actions “to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages,” except that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.” 29 U.S.C.A. § 255(a). Of course, assuming that the higher rate applies to the whole claim benefits the Caretakers.

. Our calculations are as follows: $700 a month -j- 30 days a month -s- $5.15 per hour x 7 days a week = 31.7 hours a week.

. The only evidence that a Caretaker worked longer than 4.5 hours in one day is deposition testimony from one Caretaker that occasionally he would spend a 7 or 8 hour day in the park. Even with one 8 hour day, however, the Caretaker would have to work over 4 hours each of the other days to exceed the 32 hours a week for which he was compensated. There was no indication that any Caretaker regularly worked over 4 hours a day.

. The dissent argues that Baltimore County, as the moving party, has failed to meet its burden because it has presented no evidence that the Caretakers’ compensable duties took less than 32 hours a week to complete. See post at 16. Baltimore County may discharge its burden as the party moving for summary judgment "by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party’s case.” Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Baltimore County met this burden by demonstrating that during extensive deposition testimony not one of the Caretakers testified to spending over 32 hours a week on FLSA work. The Caretakers cannot survive the motion for summary judgment, as the dissent appears to suggest, by presenting evidence of the "kind of activities” that they regularly performed and merely alleging that they were not appropriately compensated for them. Fed. R. Civ. Pro. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations.”).