**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 17-1187**

MARYAM BALBED,

Plaintiff - Appellant,

v.

EDEN PARK GUEST HOUSE, LLC; ETTY BELA MUKENDI; BRUNO MUKENDI; TREZILA MUKENDI,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:16-cv-00193-PJM)

Argued: December 6, 2017                    Decided: January 25, 2018

Before MOTZ, AGEE, and FLOYD, Circuit Judges.

Reversed and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Agee and Judge Floyd joined.

**ARGUED:** Brian Wolfman, GEORGETOWN LAW APPELLATE COURTS IMMERSION CLINIC, Washington, D.C., for Appellant. Brian M. Maul, LAW OFFICE OF BRIAN M. MAUL, LLC, Frederick, Maryland, for Appellees. **ON BRIEF:** Meghan E. Breen, Student Counsel, Anna Deffebach, Student Counsel, Hali Kerr, Student Counsel, Wyatt G. Sassman, GEORGETOWN LAW APPELLATE COURTS IMMERSION CLINIC, Washington, D.C., for Appellant.

DIANA GRIBBON MOTZ, Circuit Judge:

Maryam Balbed brings this action, contending that her former employer, Eden Park Guest House, failed to compensate her for all the time that she worked and failed to pay her overtime wages in violation of the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law, and the Montgomery County minimum wage requirement. Balbed appeals the district court's grant of summary judgment to Eden Park. For the reasons that follow, we reverse and remand for further proceedings consistent with this opinion.

I.

Eden Park Guest House is a small family-owned bed and breakfast located in Takoma Park, Maryland. In July 2015, Eden Park hired Balbed to serve as its innkeeper. The parties entered into a written agreement, in which Eden Park paid Balbed $800/month and provided her with a room in the inn, laundry, utilities, and daily breakfast. In exchange, Balbed agreed to answer phones, make reservations, reply to emails, check guests in and out, serve breakfast to guests, clean public areas and guest rooms, and manage Eden Park's social media presence.

The agreement set forth a daily schedule that divided Balbed's time into three categories: (1) serve breakfast to guests daily (for a total of seven hours per week); (2) clean the guests rooms and common spaces five days a week (for a total of twenty-two hours per week); and (3) as necessary, check in guests between 4:00 p.m. to 9:30 p.m. and close the bed and breakfast at 10:00 p.m. "unless otherwise specified." Thus, the

contract provided Balbed would work 29 hours per week on the first two categories, but did not specify the amount of time required for the third — checking guests in and out, as necessary — or for the additional duties listed that did not fall into any of these three categories: answering phones, making reservations, replying to emails, and managing Eden Park's social media presence.

Eden Park contends that the contract required 29 hours of work per week, entitling Balbed to $1107.80/month.[1]  Eden Park maintains that it compensated Balbed with an amount in excess of this because it paid Balbed $800/month and provided her lodging that it valued as worth between $850/month and $1800/month.  Balbed challenges that assessment of the lodging's value and claims that, notwithstanding the contract, she worked in excess of 100 hours per week nearly every week without a day off.

Eden Park employed Balbed from July 2015 through January 2016.  She filed this suit on January 19, 2016 and quit shortly after.

Balbed moved for partial summary judgment, arguing that Eden Park could not receive any credit for her room and board, because it did not maintain records of the cost of room and board.  Balbed also contended that Eden Park did not pay her a minimum wage, because the cash payment did not compensate her for all the hours she worked.

---

[1] This figure represents four weeks at 29 hours each, at the then-prevailing Montgomery County minimum wage of $9.55.

3

Eden Park cross-moved for summary judgment, maintaining that the parties' written contract constituted a "reasonable agreement" under 29 C.F.R. § 785.23, and that this exempted Eden Park from all other FLSA requirements. The district court agreed with Eden Park, concluding that 29 C.F.R. § 785.23 carved out an exception to the other FLSA regulatory requirements for recordkeeping and calculation of in-kind wages. Because the court found the parties' contract constituted a reasonable agreement within the meaning of § 785.23, it granted summary judgment to Eden Park.

We review a grant of summary judgment de novo, viewing all facts and inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II.

### A.

This case involves the interaction of several regulations promulgated by the Department of Labor pursuant to its authority under the FLSA. That statute requires employers to pay their employees an hourly minimum wage, 29 U.S.C. § 206(a), at either the federal wage rate or the applicable state or local rate, whichever is higher, *id.* § 218(a). The statute entitles employees to overtime pay for all hours worked over forty per week at one and one-half times their ordinary rate of pay. *Id.* § 207(a)(1).

4

Section 203(m) of the statute provides that "wages" include cash and, under certain circumstances, "the reasonable cost . . . to the employer of furnishing [the] employee with board, lodging, or other facilities." [2] 29 U.S.C. § 203. The Department of Labor regulations, promulgated pursuant to § 203(m), provide that to claim the credit for lodging as wages, an employer must ensure that:

1. The lodging is regularly provided by the employer or similar employers, 29 C.F.R. § 531.31;

2. The employee voluntarily accepts the lodging, 29 C.F.R. § 531.30;

3. The lodging is furnished in compliance with applicable federal, state, or local law, 29 C.F.R. § 531.31;

4. The lodging is provided primarily for the benefit of the employee rather than the employer, 29 C.F.R. § 531.3(d)(1); and

5. The employer maintains accurate records of the costs incurred in furnishing the lodging, 29 C.F.R. § 516.27(a).

U.S. Dep't. of Labor, Wage and Hour Div., Field Assistance Bulletin No. 2015-1 (Dec. 17, 2015); *see also* U.S. Dep't. of Labor, *Credit Towards Wages Under Section 3(m)*, https://www.dol.gov/whd/homecare/credit_wages_faq.htm (last visited Jan. 10, 2018) [hereinafter DOL § 203(m) Manual].

Section 207(a)(1) of the statute provides for the calculation of overtime hours. 29 U.S.C. § 207(a)(1). A Department of Labor regulation promulgated pursuant to

---

[2] Under 29 C.F.R. § 531.32, "other facilities" may include meals, utilities, and additional in-kind items. To the extent that Eden Park intends to claim a wage credit for these "other facilities" furnished to Balbed, it must comply with the same requirements laid out here with respect to lodging.

§ 207(a)(1) sets forth rules regarding the calculation of hours worked where an employee lives on the employer's premises:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and *any reasonable agreement* of the parties which takes into consideration all of the pertinent facts will be accepted. . . .

29 C.F.R. § 785.23 (2004) (emphasis added).

B.

Eden Park contends that the FLSA regulations that govern the § 203(m) lodging credit do not apply here. Relying on our unpublished opinion in *Myers v. Baltimore County*, 50 F. App'x 583 (4th Cir. 2002), Eden Park argues that the value of room and board need not conform to § 203(m)'s requirements (contained in 29 C.F.R. § 531 and 29 C.F.R. § 516) if an employer and employee reach a "reasonable" agreement under 29 C.F.R. § 785.23.

Eden Park misreads *Myers*. There, we held that the district court did not err in finding that an agreement between Baltimore County and caretakers for the county parks, which provided for on-site accommodation in exchange for a caretaker's continuous presence in the park and the performance of other duties, was reasonable under § 785.23. 50 F. App'x at 585–86, 589. The parties in *Myers*, however, did not dispute the *value* of the on-site accommodation. *See id.* at 589. Thus, *Myers* provides no support for Eden Park's contention that 29 C.F.R. § 785.23, governing hours worked by an employee who

6

lives in lodging provided by his employer, eliminates the need to comply with the § 203(m)'s requirements, governing the *wages* earned for the hours worked. Nor does any other case or regulation support such a result.

In fact, 29 C.F.R. § 785.23 simply provides a limited exception to the general requirement that an employee must be compensated for all hours actually spent at work. Thus, that regulation allows employers and employees to reach a "reasonable agreement" regarding the number of hours presumptively worked when an employee resides on the employer's premises. This narrow exception to determining hours worked has no bearing on an employer's obligations under § 203(m) when supplementing cash wages with in-kind compensation like board or lodging.

The employment agreement between Eden Park and Balbed had to comply with the requirements that govern not just 29 C.F.R. § 785.23, but also § 203(m). The district court failed to make a finding as to whether Eden Park's in-kind compensation conformed to the requirements under § 203(m) and its implementing regulations. Nor did the court assess all the "pertinent facts" in determining the reasonableness of the employment agreement under 29 C.F.R. § 785.23. We address these issues in turn.

III.

Eden Park estimates that the lodging it provided to Balbed as in-kind compensation had a value between $850/month and $1800/month. The $850 estimate relies on the asserted knowledge of the local rental market by the inn's General Manager. The $1,800 estimate rests on the price Eden Park charged guests to stay in an upstairs

7

guestroom. Thus, according to Eden Park, even if its agreement with Balbed required her to work not just 29 but 40 hours per week, the value of the lodging ($850–$1800 a month), combined with the $800 monthly cash wages and other in-kind benefits (utilities and breakfast), exceeded the minimum wage. But in calculating the value of the lodging and other in-kind items, Eden Park relies on their purported market value, which includes profit. Department of Labor regulations promulgated pursuant to Section 203(m) prohibit this type of alteration. *See* 29 C.F.R. § 531.3(b).

The regulations provide only two ways to calculate the value of in-kind compensation — reasonable cost *or* fair value — and an employer must use whichever is less. 29 C.F.R. § 531.3(c). The reasonable cost of housing "does not include a profit to the employer." 29 C.F.R. § 531.3(b). As for fair value, the regulations make clear that an employer may only use the fair value of housing as the amount credited toward wages if the fair value is *equal to or lower* than the amount the employer actually pays for the housing. 29 C.F.R. § 531.3(c). The regulations direct employers to calculate the actual cost of providing lodging to an employee by apportioning the monthly mortgage, rental payments, and utility payments. *See* 29 C.F.R. § 531.4; *see also* DOL § 203(m) Manual.

Eden Park has not attempted to meet these requirements. Moreover, Balbed maintains that Eden Park cannot do so now because the inn failed to keep contemporaneous records. *See* 29 C.F.R. § 516.27(a) ("[A]n employer who makes deductions from wages of employees for 'board, lodging, or other facilities' . . . shall maintain and preserve records."). DOL regulations require an employer claiming the § 203(m) wage credit for lodging to keep two kinds of records: (1) records regarding the

8

cost to the employer of providing the housing and (2) records regarding wage calculations taking lodging into account.[3]  *See* 29 C.F.R. §§ 516.27(a)(1), (b).  Since Eden Park did not produce such records, Balbed contends that Eden Park is now precluded from using the value of the lodging as in-kind compensation.

In support of this contention, Balbed relies primarily on *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468 (11th Cir. 1982).  There the Eleventh Circuit rejected the employers' effort to deduct the cost of meals and lodging in a case in which they assertedly had not kept the records required by the regulations.  However, the *Donovan* holding rested on the fact that the employers "failed to sustain their burden of proving 'reasonable costs' of the meals and lodging."  *Id*. at 473.  The court specifically did not address the validity of the argument that the employers' failure "to maintain records" deprived them of the ability to deduct the cost of meals and lodging.  *Id*.

We believe that if Eden Park can provide a reconstruction of records that the district court deems reasonable, those reconstructed records can be used to assess Balbed's appropriate wages.  *See* 29 C.F.R. § 516.27(a)(2) ("No particular degree of itemization is prescribed.  However the amount of detail shown . . . should be sufficient to enable  . . . [an] authorized representative to verify the nature of the expenditure and

_____

[3] Records regarding the cost to the employer of providing the housing should "include itemized accounts showing the nature and amount of any expenditures entering into the computation of the reasonable cost." 29 C.F.R. § 516.27(a)(1). Moreover, if — because of a § 203(m) credit — an employee receives less in cash wages than the minimum wage for each hour worked in the workweek, "the employer shall maintain records showing on a workweek basis those additions to or deductions from wages." 29 C.F.R. § 516.27(b).

the amount by reference to the basic records."). Courts have accepted reasonable reconstructions of records in a variety of contexts. *See In re French,* 499 F.3d 345, 355 (4th Cir. 2007) (explaining that a debtor need not maintain perfect records, but must preserve sufficient records to enable the court to reasonably reconstruct an accurate picture of debtor's finances); *Cebollero v. C.I.R.,* 967 F.2d 986, 989 (4th Cir. 1992) (clarifying that "[w]here the taxpayer fails to keep or produce adequate records from which his income can be determined," the IRS may "resort to the best procedure available under the circumstances" to reconstruct the records (internal quotation marks and citation omitted)); *Archie v. Grand Cent. P'ship, Inc.,* 86 F. Supp. 2d 262, 266 (S.D.N.Y. 2000) ("[T]hat defendants did not maintain records showing deductions from wages on a workweek basis, as required under 29 C.F.R. § 516.27(b) for employers who provide benefits as wages, does not mandate denial of deductions now."). It seems appropriate to permit an attempt at such a reconstruction here.

On remand, after Eden Park offers the evidence required by § 203(m), the district court should make a finding as to the reasonable cost of the lodging and other in-kind benefits that Eden Park provided to Balbed.[4]

---

[4] Balbed also maintains that Eden Park failed to satisfy the third requirement necessary to claim the § 203(m) credit: that the lodging must be furnished in compliance with applicable federal, state, or local law. 29 C.F.R. § 531.31. Balbed argues that Eden Park did not obtain a permit to use a cellar for sleeping as required by Montgomery County Code § 26-5(e)–(f). Eden Park maintains that the room it provided is not in a cellar, but a basement, for which no permit is required. The district court did not address whether the lodging complied with Montgomery County Code § 26-5(e)–(f). On remand, it should do so.

IV.

Finally, we consider the hours required by the agreement under the 29 C.F.R. § 785.23 analysis. That regulation reflects a recognition that in employment relationships where employees reside on the employer's premises, it may be difficult to determine the exact number of hours worked. For this reason, 29 C.F.R. § 785.23 provides that "*any reasonable agreement* of the parties which takes into consideration all of the pertinent facts will be accepted." 29 C.F.R. § 785.23 (emphasis added).

The regulation necessarily governs a range of employment relationships and circumstances. Thus, there is no single generic test for "reasonableness" under 29 C.F.R. § 785.23. Courts have found that an agreement reached pursuant to this regulation "is binding if it is reasonable in light of 'all of the pertinent facts' of the employment relationship." *See Garofolo v. Donald B. Heslep Assocs.*, 405 F.3d 194, 199 (4th Cir. 2005) (quoting 29 C.F.R. § 785.23); *accord Leever v. Carson City*, 360 F.3d 1014, 1018 (9th Cir. 2004); *Brock v. City of Cincinnati*, 236 F.3d 793, 806 (6th Cir. 2001) (explaining that an agreement is reasonable under 29 C.F.R. § 785.23 if it "falls within a broad zone of reasonableness, considering its terms and all of the facts and circumstances of the parties' relationship").

Balbed argues that, notwithstanding the value of the in-kind benefits, the contract was not a "reasonable agreement" under 29 C.F.R. § 785.23. The contract between Eden Park and Balbed may or may not fall within the "broad zone of reasonableness" accorded to 29 C.F.R. § 785.23 agreements. *See Brock*, 236 F.3d at 806. On remand, the district

11

court can assess this by examining "all of the pertinent facts" in the employment relationship. 29 C.F.R. § 785.23; *Garofolo*, 405 F.3d at 199–201.

Thus, on remand, the court should consider how many hours Balbed presumptively worked each day by examining whether Balbed was "engaged to wait" or "wait[ing] to be engaged" during the "check-in" hours specified in the contract. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 136–137 (1944). The face of the contract suggests that Balbed was required to work 29 hours *at a minimum*,[5] and dictates periods of time where Balbed would be essentially "on-call" (4:00 p.m. to 9:30 p.m. each night). Under the FLSA, hours worked include all time spent performing tasks for the benefit of the employer or waiting to perform such tasks (i.e. being "engaged to wait"). *See IBP, Inc. v. Alvarez,* 546 U.S. 21, 25–26 (2005); *Skidmore*, 323 U.S. at 137. The Supreme Court has explained that whether waiting time is work time under the FLSA raises "a question of fact to be resolved by appropriate findings of the trial court . . . . Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged." *Skidmore*, 323 U.S. at 136–37. Whether Balbed was "engaged to wait" or "wait[ing] to be engaged" during the "check-in and closing time" therefore constitutes a question of fact to be resolved by the district court. *Id.*

---

[5] The district court's summary judgment order rested on the fact that "the parties don't dispute that *at least nominally* the contract appears to require 29 hours of service." Joint Appendix 909 (emphasis added). Eden Park argues that Balbed has conceded that the employment agreement required only 29 hours per week and, therefore, is precluded from arguing that it required her to work for more than 29 hours per week. We disagree with Eden Park. As the district court recognized in its oral ruling, Balbed conceded only that the agreement required her to work for *at least* 29 hours.

12

For example, in *Kelly v. Hines-Rinaldi Funeral Home, Inc.,* 847 F.2d 147, 148 (4th Cir. 1988), the plaintiff sought "overtime pay under the theory that he was employed . . . to work from 9:00 p.m. until 8:30 a.m. the next morning, six days a week." The district court used the *Skidmore* test to address whether the plaintiff was "engaged to wait" or "wait[ing] to be engaged" between midnight and 6:30 a.m. *Id.* at 148–49 (citing *Skidmore*, 323 U.S. at 136–137). The district court concluded that those hours could not be considered working time because most of the night hours were available for the plaintiff's uninterrupted use at his own on-site residence. *Id.* at 148. This court affirmed. *Id.* at 149. If the district court in the case at hand similarly concludes that Balbed "waited to be engaged," then those hours should not be considered working time. But if the court concludes that Balbed was "engaged to wait" during the "check-in" hours, Eden Park is obligated to compensate her for those hours.

On remand, the district court should also address Balbed's contention that the agreement "provide[s] an unreasonably short amount of time to perform the assigned tasks." *Garofolo*, 405 F.3d at 201 (internal quotation marks and citation omitted). Eden Park maintains that the contract only requires 29 hours of work per week. The face of the contract indicates that serving breakfast and cleaning guest rooms and common areas requires 29 hours. But the contract also provides that Balbed will answer phones, make reservations, reply to emails, and manage Eden Park's social media presence. Therefore, the district court should make a finding as to whether it was reasonable for Eden Park to require Balbed to complete these additional tasks within the 29-hour time frame. Given the individual circumstances of this case, this may (or may not) have been reasonable.

13

*See Leever*, 360 F.3d at 1021 (explaining that an employer is obligated to make an investigation as to the number of hours employees were required to work and to take a reasonable estimate of such hours into account).[6]

V.

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

---

[6] The district court disposed of the state and local law claims by concluding that Eden Park complied with the FLSA. Balbed argues that even if Eden Park prevails under the FLSA, her state law claims remain. Eden Park contends that those claims are preempted. Since § 785.23 allows the parties to enter into a "reasonable agreement" when it is difficult to ascertain the number of hours "worked" by a live-in employee, Eden Park maintains that allowing the state law claims to proceed would hinder the federal objective and render § 785.23 meaningless. *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987) (explaining that a state law is preempted "if it interferes with the methods by which the federal statute was designed to reach [that] goal"). We express no opinion on this matter, but remand for initial consideration by the district court.